EXHIBIT A

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| In re: | ) |
| | ) |
| THE COLONIAL BANCGROUP, INC. | ) Case Number 09-32303 |
| | ) Chapter 11 Case |
| Debtors. | ) |

### BB&T'S RESPONSE TO THE FDIC-RECEIVER'S MOTION FOR AN ORDER MODIFYING THE AUTOMATIC STAY AND RESERVATION OF RIGHTS

As authorized by the Court's Order of May 27, 2010 [Doc. 736], Branch Banking and Trust Company ("BB&T") submits this Response to the FDIC-Receiver's Motion for An Order Modifying the Automatic Stay, as amended (the "Amended Motion") [Docs. 156 & 499], and Reservation of Rights.

1.  The FDIC-Receiver's Amended Motion seeks relief from the automatic stay to assert setoff rights under 11 U.S.C. § 553(a) against the *unencumbered* balances of the Debtor's seven (7) deposit accounts at BB&T with account numbers ending in 1127, 5437, 5460, 5452, 5445, 3234 and 3218 (the "Debtor Accounts"). BB&T claims a perfected, first-priority, security interest in all of the Debtor Accounts except for the account ending in 1127 (the "Pledged Accounts"). BB&T reserves all rights relating to the Pledged Accounts.[1]

2.  The Pledged Accounts serve as collateral for certain loans held by BB&T that are outstanding to borrowers affiliated with the Debtor (the "Affiliate Liabilities"). BB&T

---

[1] BB&T reserves all rights, remedies, claims and defenses with respect to the Pledged Accounts and the Affiliate Liabilities, including without limitation the right to file its own motion for relief pursuant to 11 U.S.C. § 362 with respect to the Pledged Accounts and to pursue collection of the Affiliate Liabilities against all borrowers, guarantors and collateral. BB&T likewise expressly reserves all rights, remedies, claims and defenses against the FDIC-Receiver and the FDIC under the P&A Agreement and applicable law, including without limitation the right to obtain a refund of any premium previously paid by BB&T to the FDIC-Receiver attributable to the Pledged Accounts and to require the repurchase of the Affiliate Liabilities secured by the Pledged Accounts by the FDIC-Receiver.

purchased the Affiliate Liabilities and assumed the Debtor Accounts on August 14, 2009, pursuant to a Purchase and Assumption Agreement between BB&T and the FDIC of the same date (the "P&A Agreement").  BB&T has other collateral securing the Affiliate Liabilities that is not property of the Debtor's estate which it is in the process of realizing upon.  However, there is no question that BB&T will need to recover some or all of the balances of the Pledged Accounts in order to collect all amounts owed under the Affiliate Liabilities.  BB&T intends to file its own motion for relief from the automatic stay under 11 U.S.C. § 362 with respect to the Pledged Accounts in the near future.

3. BB&T's security interest in the Pledged Accounts is perfected through BB&T's "control" of the Pledged Accounts.  *See* Alabama Code § 7-9A-314.  A secured party has "control" of a deposit account if "*the secured party is the bank with which the deposit account is maintained.*"  Alabama Code § 7-9A-104(a)(1)(emphasis supplied).

4. Due to BB&T's interest in the Pledged Accounts, the Court entered an Order on May 27, 2010 [Doc. 736], amending the Confidentiality Stipulation and Order [Doc. 659] governing discovery in this contested matter to grant BB&T access to the record, and authorizing BB&T to file a response to the Amended Motion at its election.

5. BB&T, having now reviewed the relevant portions of the record in this contested matter and the parties' submissions that were not previously available to BB&T, does not believe that the Amended Motion impacts BB&T's interest in the Pledged Accounts for several reasons.

6. First, in its Amended Motion, the FDIC-Receiver acknowledges BB&T's interest in the Pledged Accounts as a secured creditor and expressly limits the relief it is seeking to the *unencumbered* balances of the Pledged Accounts-- i.e., any amounts remaining *after* the payment of BB&T's claim.  In other words, the FDIC-Receiver is only seeking relief with respect to the

balances of the Pledged Accounts to the extent that, and by the amount which, BB&T is "over-secured."[2] The provision of the P&A Agreement relied upon by the FDIC-Receiver (Section 9.5) provides that the FDIC-Receiver can direct BB&T to return "*portions*" of any deposit accounts assumed by BB&T without taking back the deposit account itself, or the entire balance of the deposit account. Section 9.5 provides, in relevant part:

> At any time, the Receiver or the Corporation may, in its discretion, determine that all or *any portion* of any deposit balance assumed by the Assuming Bank pursuant to this Agreement does not constitute a "Deposit" (or otherwise, in its discretion, determine that it is in the best interest of the Receiver or Corporation to withhold all or *any portion* of any deposit), and may direct the Assuming Bank to withhold payment of all or any portion of any such deposit balance.... At the direction of the Receiver or the Corporation, the Assuming Bank shall return all or *any portion* of such deposit balance to the Receiver or the Corporation, as appropriate, and thereupon the Assuming Bank shall be discharged from any further liability to such depositor with respect to such returned deposit balance.
>
> P&A Agreement, § 9.5 (emphasis added).

Clearly, the FDIC-Receiver's request for relief from the automatic stay is limited to the "portions" of the Pledged Accounts, if any, remaining after the payment of BB&T's claim. Thus, the FDIC-Receiver is not seeking to exercise setoff rights against property of the Debtor in which BB&T claims an interest.

7.  Second, no party disputes that the Pledged Accounts were assumed by BB&T on August 14, 2009, and have been "maintained" at BB&T at all times from August 14, 2009 to the present. The evidence in the record is undisputed on this point. (Hicks Depo. 25:6-23, 31:12-23, 37:3-14, 79:8-13). Merely "maintaining" the deposit accounts is all that is required in order for BB&T to have "control" of the accounts for purposes of perfecting its security interest therein

---

[2] *See* Amended Motion, Doc. # 499, @ fn 2 ("[T]he FDIC-Receiver's motion does not seek to exercise setoff rights as to any portion of the deposit balances that is needed by BB&T as substitute collateral for Affiliate Liabilities under the relevant security agreement. Only those portions of the balances that are not needed by BB&T as collateral will be subject to the FDIC-Receiver's setoff rights.").

3

under Alabama Code § 7-9A-104(a)(1) and § 7-9A-314. Accordingly, BB&T asserts that its security interest in the Pledged Accounts is perfected under Alabama Code § 7-9A-314 by virtue of its control of the accounts. In fact, both the FDIC-Receiver and the Debtor have admitted that BB&T has a perfected security interest in the Pledged Accounts. *See* Debtor's Reply Brief, Doc. 735, p. 7; Amended Motion, Doc. 499, ¶ 21; FDIC's Statement of Facts, Doc. 715, ¶ 27 & 28. Thus, no party appears to be challenging the validity or priority of BB&T's security interest in the Pledged Accounts in connection with the Amended Motion contested matter.

8.  Third, even if the Amended Motion were directed to the encumbered portions of the Pledged Accounts needed to pay BB&T's claim (which it is not), the Amended Motion itself does not amount to an exercise of any contractual rights against BB&T or any setoff rights in the Pledged Accounts. Rather, the Amended Motion merely seeks relief from the automatic stay to exercise its rights related to the Pledged Accounts, whatever they might be. *Grella v. Salem Five Cent Savings Bank*, 42 F.3d 26, 33 (1st Cir. 1994) (the hearing on a motion to lift the stay is not a proceeding for determining the merits of the underlying substantive claims defenses, or counterclaims); *In re Johnson*, 756 F.2d 738, 740 (9th Cir.), *cert. denied*, 474 U.S. 828, 106 S.Ct. 88, 88 L.Ed.2d 72 (1985) (relief from stay hearings are limited in scope to adequacy of protection, equity, and necessity to an effective reorganization, and validity of underlying claims is not litigated); *In re. Calore Exp. Co., Inc.*, 288 F.3d 22 (1st Cir. 2002) (Hearing on a motion to lift the automatic stay is generally not the proper time or place for the determination of substantive rights); *In re Vitreous Steel Products Co.*, 911 F.2d 1223, 1232 (7th Cir. 1990) (a hearing on a motion to lift the automatic stay does not have collateral estoppel or res judicata effect and does not bar subsequent litigation challenging the validity, priority or extent of liens or asserting other claims against the alleged lien creditor). *See also, In re. W.G. Wade Shows, Inc.*,

234 B.R. 185 (Bankr. M.D. Fla. 1999); *In re. Midway Airlines, Inc.*, 167 B.R. 880 (Bankr. N.D. Ill. 1994); *In re. Waste Alternatives, Inc.*, 171 B.R. 147 (Bankr. M.D. Fla. 1994). Indeed, the Amended Motion is no different from any routine motion for relief by a junior mortgagee or junior lienor, which by its very nature does not impact in any way the substantive rights and interests of the first mortgagee/lienor under non-bankruptcy law. BB&T acknowledges that the Pledged Accounts are subject to whatever rights the FDIC-Receiver may have under the P&A Agreement. It is undisputed, however, that the FDIC-Receiver has not exercised any such contractual rights in the Pledged Accounts to date. BB&T reserves the right to raise any and all rights, remedies, claims and defenses available to it under non-bankruptcy law at such time as the FDIC-Receiver attempts to assert its contractual rights under the P&A Agreement.

## Conclusion

BB&T takes no position on the Amended Motion except, in an abundance of caution, to respectfully request the Court to eliminate any possible confusion or misconstruction of the Court's ruling on the Amended Motion by: (1) expressly limiting any relief awarded to the FDIC-Receiver to the unencumbered portions of the Pledged Accounts, if any, that are not needed to pay BB&T's claim, and (2) making an express determination that the Court's ruling on the Amended Motion is without prejudice to, and does not adversely affect, (i) any security interest of BB&T in the Pledged Accounts, (ii) the priority of any security interest of BB&T in the Pledged Accounts, or (iii) any rights, remedies, claims or defenses that may be available to BB&T against the FDIC-Receiver under the P&A Agreement or non-bankruptcy law at such time as the FDIC-Receiver attempts to exercise any contractual rights relating to the Pledged Accounts.

BB&T requests such other and further relief as the Court deems just and appropriate.

                Respectfully Submitted,

                /s/ N. Christian Glenos
                N. Christian Glenos
                Attorney for Branch Banking and Trust Company

OF COUNSEL:

BRADLEY ARANT BOULT CUMMINGS LLP
1819 Fifth Avenue North
Birmingham, Alabama 35203
(205) 521-8000