**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF ALABAMA**

In re:

**THE COLONIAL BANCGROUP, INC.,**

      Debtor.

**FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for Colonial Bank,**

      Appellant,

   v.

**THE COLONIAL BANCGROUP, INC., et al.,**

      Appellees.

Case No. 2:11-cv-0133 (MHT)

**Bankruptcy Appeal**

**REPLY BRIEF OF APPELLANT FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER FOR COLONIAL BANK**

Michael A. Fritz, Sr.
michael@fritzandhughes.com
Fritz, Hughes & Hill LLC
1784 Taliaferro Trail, Suite A
Montgomery, Alabama  36117
(334) 215-4422

John J. Clarke, Jr.
Thomas R. Califano
DLA Piper LLP (US)
1251 Avenue of the Americas
New York, New York  10020-1104
(212) 335-4500

Attorneys for the
  Federal Deposit Insurance Corporation,
  as Receiver for Colonial Bank

Dated:  May 13, 2011

## Table of Contents

Page

TABLE OF AUTHORITIES ........................................................................................................ ii

PRELIMINARY STATEMENT ................................................................................................... 1

ARGUMENT -- THE ORDERS SHOULD BE REVERSED AND THE
    FDIC-RECEIVER SHOULD BE PERMITTED TO EXERCISE
    ITS CONTRACT RIGHT .......................................................................................................... 3

I.      SECTION 553(a) OF THE BANKRUPTCY CODE PERMITS SETOFF ...................... 3

      A.      The Operation of the P&A Agreement Provisions Here Does Not
            Transform a Pre-Petition Debt Into a Post-Petition Debt ...................................... 3

            1.      The Conditional Delegation of Deposit Liabilities Did Not
                    "Extinguish" the FDIC-Receiver's Debt ................................................... 3

            2.      Revocation of a Delegation of a Pre-Petition Debt Does Not
                    Create a New Post-Petition Debt ............................................................... 5

      B.      Section 553(a)(3) of the Bankruptcy Code Permits Setoff Here .......................... 8

II.     THE FDIC-RECEIVER'S MOTION FOR STAY RELIEF
         SHOULD BE GRANTED ............................................................................................... 12

III.    THE CASH COLLATERAL ORDER SHOULD BE REVERSED ............................... 13

CONCLUSION ........................................................................................................................... 14

## <u>Table of Authorities</u>

<u>Page</u>

<u>Cases</u>

*Bernstein v. IDT Corp.,*
    76 B.R. 275 (S.D.N.Y. 1987)....................................................................13

*Boston & Maine Corp. v. Chicago Pac. Corp.,*
    785 F.2d 562 (7th Cir. 1986) .................................................................8

*Braniff Airways, Inc. v. Exxon Co. U.S.A., Inc.,*
    814 F.2d 1030 (5th Cir. 1987) ............................................................2, 7

*Cash Inn of Dade, Inc. v. Metropolitan Dade County,*
    938 F.2d 1239 (11th Cir. 1991) .............................................................5

*Connecticut Nat'l Bank v. Germain,*
    503 U.S. 249 (1990).............................................................................9

*Continental Air Lines, Inc. v. Hillblom (In re Continental Air Lines, Inc.),*
    61 B.R. 758 (S.D. Tex. 1986) ..............................................................13

*DuVoisin v. Foster (In re Southern Indus. Banking Corp.),*
    809 F.2d 329 (6th Cir. 1987) ..............................................................11

*Elsinore Shore Assocs. v. First Fidelity Bank (In re Elsinore Shore Assocs.),*
    67 B.R. 926 (Bankr. D.N.J. 1986) ........................................................7

*Fireman's Fund v. Falco Constr. Corp.,*
    493 F. Supp. 2d 143 (D. Mass. 2007) ....................................................4

*Gilbert v. Suburban Athletic Club (In re Dayton Circuit Courts No. 2),*
    80 B.R. 434 (Bankr. S.D. Ohio 1987)...................................................11

*Goldstein v. Franklin Square Nat'l Bank,*
    107 F.2d 393 (2d Cir. 1939)................................................................11

*Headrick v. Rockwell Int'l Corp.,*
    24 F.3d 1272 (10th Cir. 1994) ..............................................................4

*Heintzelman's Truck Center, Inc. v. Ford Motor Co. (In re Bayshore Ford*
    *Truck Sales, Inc.),* 471 F.3d 1233 (11th Cir. 2006) ...............................12

*Herzog v. Mandan Security Bank (In re PRS Prods., Inc),*
    574 F.2d 414 (8th Cir. 1978) ..............................................................11

Page

*Horne v. Potter,*
    392 Fed. App'x. 800 (11th Cir. 2010) ...................................................................5

*Howe v. Varity Corp.,*
    36 F.3d 746 (8th Cir. 1994) ....................................................................................4

*In re Conner Ins. Agency, Inc.,*
    No. 93-20279 1994 WL 16006138 (Bankr. S.D. Ga. Nov. 4, 1994) ....................12

*In re Ealy,*
    392 B.R. 408 (Bankr. E.D. Ark. 2008), *appeal dismissed,*
    396 B.R. 20 (8th Cir. B.A.P. 2008) ....................................................................12

*In re Elcona Homes Corp.,*
    863 F.2d 483 (7th Cir. 1988) ................................................................................11

*In re Lehman Bros. Holdings, Inc.,*
    404 B.R. 752 (Bankr. S.D.N.Y. 2009) ..............................................................2, 6

*In re Nuclear Imaging Sys., Inc.,*
    260 B.R. 724 (Bankr. E.D. Pa. 2000) .................................................................12

*In re Washington Capital Aviation & Leasing,*
    156 B.R. 167 (Bankr. E.D. Va. 1993) ...................................................................4

*Inglesby, Falligant, Horne, Courington & Nash, P.C. v. Moore*
    *(In re American Steel Prod., Inc.),* 197 F.3d 1354 (11th Cir. 1999) ...................9

*Internal Rev. Serv. v. Orlinksi (In re Orlinski),*
    140 B.R. 600 (Bankr. S.D. Ga. 1991) ................................................................12

*Murry v. Commissioner of I.R.S. (In re Murry),*
    15 B.R. 325 (Bankr. E.D. Ark. 1981) ................................................................12

*New York County Nat'l Bank v. Massey,*
    192 U.S. 138 (1904) ........................................................................................10-11

*Prudential Ins. Co. of Am. v. Nelson (In re Chickamauga Tr. Co.),*
    101 F.2d 441 (6th Cir. 1939) ................................................................................8

*Quandel Group, Inc. v. Beacon Hill Mortgage Corp.,*
    No. 3:01-cv-0131, 2008 WL 794891 (M.D. Pa. Mar. 24, 2008) ..........................4

*Sherman v. First City Bank of Dallas (In re United Sciences of*
    *America, Inc.),* 893 F.2d 720 (5th Cir. 1990) ......................................................8

Page

*Stephenson v. Salisbury (In re Corland Corp.),*
   967 F.2d 1069 (5th Cir. 1992) ...............................................................................8

*Transportation & Transit Assocs. v. Morrison Knudsen Corp.,*
   255 F.3d 397 (7th Cir. 2001) .................................................................................4

*Travelers Cas. & Surety Co. of Amer., Inc. v. East Beach Development, LLC,*
   Civ. A. No. 07-0347-WS-B, 2008 WL 3211306 (S.D. Ala. Aug. 7, 2008)...........................4

*Turner Broad. Sys., Inc. v. Sanyo Electric, Inc.,*
   33 B.R. 996 (N.D. Ga. 1983) ...............................................................................13

*U.S. Aeroteam, Inc. v. Delphi Automotive Sys., LLC (In re U.S. Aeroteam, Inc.),*
   327 B.R. 852 (Bankr. S.D. Ohio 2005)................................................................. 7-8

*United States v. Carey (In re Wade Cook Fin. Corp.),*
   375 B.R. 580 (9th Cir. B.A.P. 2007).......................................................................7

*United States v. Gerth,*
   991 F.2d 1428 (8th Cir. 1993) ...............................................................................7

*United States v. Ron Pair Enters., Inc.,*
   89 U.S. 235 (1989)...............................................................................................9

Statutes

11 U.S.C. § 362...................................................................................3, 8, 9, 11

11 U.S.C. § 363...........................................................................................8, 9

11 U.S.C. § 553.......................................................................................... *passim*

12 U.S.C. § 1822(d) ...........................................................................................11

Other Authorities

H.R. Rep. No. 595, 95th Cong., 1st Sess. 377 (1977),
   *reprinted in* 1978 U.S.C.C.A.N. 5863 ...........................................................10, 12

Joseph M. Perillo, Calamari and Perillo on Contracts, § 18.26 (5th ed. 2003) .....................1, 4, 7

Restatement (Second) of Contracts, § 318(3) .............................................................1, 3

Appellant Federal Deposit Insurance Corporation, as receiver for Colonial Bank (the "FDIC-Receiver"), respectfully submits this reply brief in further support of its appeal from three orders of the United States Bankruptcy Court for the Middle District of Alabama (Williams, C.J.) in the pending chapter 11 case of The Colonial BancGroup, Inc. (the "Debtor").

## PRELIMINARY STATEMENT

The premise of the joint opposition brief submitted by the Debtor and its Official Committee of Unsecured Creditors is that the FDIC-Receiver's conditional delegation of responsibility for deposit liabilities in its Purchase and Assumption Agreement with Branch Banking and Trust Co. ("BB&T") "discharged" or "extinguished" the FDIC-Receiver's debt to the Debtor for the deposit liabilities at issue.  The Debtor and Committee further assert that the FDIC-Receiver's post-petition exercise of its right to revoke that delegation would amount to a post-petition "incurrence" of a new debt to the Debtor.  Having recharacterized the facts to fit their argument, the Debtor and the Committee contend that setoff is not allowed.  However, no part of this argument can withstand scrutiny.

*First*, the assertion that the FDIC-Receiver's liability for the Debtor's pre-petition deposit balances was "discharged" or "extinguished" when the FDIC-Receiver entered into the P&A Agreement is simply wrong.  A party to a contract cannot free itself of contract duties or liabilities by delegating them to an assignee.  In the event of such a delegation, the obligee (the Debtor in this case) retains the right to seek recovery from the original obligor (as surety) if the party to which the obligation has been delegated fails to perform.  *See* Restatement (Second) of Contracts, § 318(3); Joseph M. Perillo, Calamari and Perillo on Contracts, § 18.26 (5th ed. 2003).  Indeed, the Debtor cannot deny this as it has asserted a claim against the FDIC-Receiver for the very same deposit liabilities that are at issue here.

*Second*, the language of the P&A Agreement makes it abundantly clear that the FDIC-Receiver's delegation to BB&T of responsibility for Colonial Bank deposit liabilities was conditional, not absolute.  The FDIC-Receiver expressly retained the right, "at any time," to revoke this delegation as to all or part of any depositor's deposit balance.  *See* P&A Agreement, § 9.5.  The FDIC-Receiver's exercise of its right to revoke the delegation of specific deposit liabilities under the P&A Agreement is not a transaction with the Debtor and is not the "incurrence" of a new post-petition debt.  Unsurprisingly, the Debtor and the Committee have not cited a single case to support their argument to the contrary (nor did the bankruptcy court in its erroneous ruling below).  Courts applying section 553(a) have rejected such an artificial analysis of when a debt "arises" or is "incurred."  *See, e.g., Braniff Airways, Inc. v. Exxon Co. U.S.A., Inc.*, 814 F.2d 1030, 1036 (5th Cir. 1987).  Even the *Lehman Brothers* decision that is discussed in appellees' brief confirms that liability for a deposit balance is "incurred" or "arises" only once – when the depositor parts with title to its funds in return for a promise by its bank to repay the depositor in the future.  *See In re Lehman Bros. Holdings, Inc.*, 404 B.R. 752, 758 (Bankr. S.D.N.Y. 2009).

It is undisputed that applicable nonbankruptcy law would permit setoff by the FDIC-Receiver in these circumstances.  Section 553(a) of the Bankruptcy Code expressly *preserves* non-bankruptcy setoff rights unless another provision in that section applies, and no other part of section 553 prohibits setoff under these circumstances.  To the contrary, section 553(a)(3) expressly allows it.  The ruling below erroneously prevented the FDIC-Receiver from exercising its right under section 9.5 of the P&A Agreement and impermissibly allowed the Debtor to use the automatic stay provided under section 362 of the Bankruptcy Code to obtain an advantage

that the Bankruptcy Code does not grant it. The bankruptcy court's erroneous orders below should be reversed.

## ARGUMENT

### THE ORDERS SHOULD BE REVERSED AND THE FDIC-RECEIVER SHOULD BE PERMITTED TO EXERCISE ITS CONTRACT RIGHT

**I. SECTION 553(a) OF THE BANKRUPTCY CODE PERMITS SETOFF**

A debtor's bankruptcy filing "does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against the claim of such creditor that arose before the commencement of the case." 11 U.S.C. § 553(a).

#### A. The Operation of the P&A Agreement Provisions Here Does Not Transform a Pre-Petition Debt Into a Post-Petition Debt

The P&A Agreement delegated to BB&T, but did not "extinguish," the FDIC-Receiver's liability to the Debtor for the deposit balances at issue. The post-petition exercise of the FDIC-Receiver's contractual right to revoke that delegation is not the "incurrence" of a new debt to the Debtor. These central errors permeate the joint opposition brief of the Debtor and the Committee and underscore the bankruptcy court's legal error below.

##### 1. The Conditional Delegation of Deposit Liabilities Did Not "Extinguish" the FDIC-Receiver's Debt

"A party subject to a contractually created obligation ordinarily cannot divest itself of liability by substituting another in its place without the consent of the party owed the duty. While the assignee may be entitled to perform for the original obligor, the original obligor remains ultimately liable until discharged by performance or otherwise." *In re Washington Capital Aviation & Leasing*, 156 B.R. 167, 175 n.3 (Bankr. E.D. Va. 1993); *see* Restatement (Second) of Contracts, § 318(3) ("Unless the obligee agrees otherwise, neither delegation of

performance nor a contract to assume the duty made with the obligor by the person delegated discharges any duty or liability."); Calimari and Perillo on Contracts, § 18.26 ("Since A continues to remain liable and C is liable to B under a third party beneficiary theory, it follows that B has a claim against both A and C but is entitled to only one satisfaction.").

As Judge Easterbrook has observed, the principle that an obligor retains liability for a delegated obligation is "entrenched in the law of contracts." *Transportation & Transit Assocs. v. Morrison Knudsen Corp.*, 255 F.3d 397, 400 (7th Cir. 2001); *see, e.g., Howe v. Varity Corp.*, 36 F.3d 746, 756 (8th Cir. 1994) ("An obligor . . . cannot free itself of contractually created duties without the consent of the persons to whom it is obligated."); *Headrick v. Rockwell Int'l Corp.*, 24 F.3d 1272, 1278 (10th Cir. 1994) ("Ordinary principles of contract law recognize that an obligor may effectively delegate performance to another who is willing to perform the delegated duty, though the obligor *remains liable as the surety* unless the obligee consents to the delegation.") (emphasis added); *Quandel Group, Inc. v. Beacon Hill Mortgage Corp.*, No. 3:01-cv-0131, 2008 WL 794891, at *3 (M.D. Pa. Mar. 24, 2008) (quoting Restatement); *Fireman's Fund v. Falco Constr. Corp.*, 493 F. Supp. 2d 143, 145-46 (D. Mass. 2007) ("In other words, 'the party contracting remains liable regardless of who actually performs the contract obligation'") (citations omitted); *cf. Travelers Cas. & Surety Co. of Amer., Inc. v. East Beach Development, LLC*, Civ. A. No. 07-0347-WS-B, 2008 WL 3211306, at *10 (S.D. Ala. Aug. 7, 2008) (applying § 318(3) but finding it inapplicable under facts presented).

Nor can the Debtor escape the application of this principle on the basis of novation.  In separate proceedings that are pending before this Court, the Debtor expressly has asserted a claim against the FDIC-Receiver for the very same deposit liabilities that are at issue in this appeal.  *See* Amended Complaint, *The Colonial BancGroup, Inc. v. F.D.I.C.*, No. 2:10-cv-0198

4

(MHT) (M.D. Ala.), ¶ 73 ("BancGroup asserts a protective claim for the outstanding balance in each of the Deposit Accounts in the event the FDIC-Receiver purports to exercise any rights it may assert under the P&A Agreement or otherwise with respect to the Deposit Accounts.").[1] Therefore, the Debtor has not agreed to forgo any right of recovery against the FDIC-Receiver with respect to the assigned liabilities.  Indeed, the Debtor's assertion of this claim constitutes an admission that the FDIC-Receiver always has retained liability for the deposit balances as a surety.[2]  Moreover, no such novation would be possible without the FDIC-Receiver's consent, especially in view of its right to revoke delegation under section 9.5 of the P&A Agreement, and the FDIC-Receiver's actions since Colonial Bank's failure demonstrate that it has not consented.[3]

### 2.     Revocation of a Delegation of a Pre-Petition Debt Does Not Create a New Post-Petition Debt

The appellees' next assertion – that the FDIC-Receiver's post-petition exercise of its contractual right to revoke the delegation of liability for all or a portion of the Debtor's pre-petition deposit balances would result in the post-petition "incurrence" of a new debt to the

---

[1] "A district court may take judicial notice of public records within its files relating to the particular case before it or other related cases."  *Cash Inn of Dade, Inc. v. Metropolitan Dade County*, 938 F.2d 1239, 1243 (11th Cir. 1991); *see Horne v. Potter,* 392 Fed. App'x. 800, 802 (11th Cir. 2010) (taking judicial notice of pleadings filed in prior case brought by employee plaintiff).

[2] The assertion by the Debtor and Committee that the FDIC-Receiver has "abandoned" any appellate challenge to the bankruptcy court's erroneous conclusions regarding BB&T's alleged assumption of liability for the deposit balances, *see* Opposition Br. at 14, is demonstrably untrue.  *See* FDIC-Receiver Br. at 2, 3-4, 13-14, 15, 18-24, 25-30.

[3] BB&T's position on this appeal is entirely consistent.  BB&T does not dispute that the delegation of deposit liabilities under the P&A Agreement was conditional and is subject to the FDIC-Receiver's rights under section 9.5 of the P&A Agreement.  *See* BB&T Br. at 7.  The FDIC-Receiver has stated in these proceedings that it will not exercise its revocation right as to the portion of the deposit balances that BB&T has sought to foreclose against.  A 43.  The P&A Agreement expressly permits a revocation of delegation as to all or a portion of a deposit balance.  *See* P&A Agreement, § 9.5.

5

Debtor – is equally meritless as a matter of law.   The bankruptcy court's adoption of this reasoning constitutes further reversible error.

The Debtor and the Committee do not dispute that liability for a deposit balance is "incurred" or "arises" when the depositor parts with title to its funds in return for a promise by its bank to repay the depositor in the future.   This incontrovertible principle of law is reiterated in the *Lehman Brothers* decision that is discussed in their opposition brief.   *See In re Lehman Bros. Holdings, Inc.*, 404 B.R. 752, 758 (Bankr. S.D.N.Y. 2009) ("The deposit of cash into a bank account creates a debtor-creditor relationship between the bank (as debtor) and the depositor (as creditor), at which time the depositor 'parts with title to the funds in exchange for a debt owed to him by the bank.'") (citation omitted); *see* FDIC-Receiver Br. at 19 (collecting cases).   In this case, the deposit balances at issue were established with Colonial Bank before the Debtor's petition date, and that is when the FDIC-Receiver's "debt" to the Debtor "arose" or was "incurred."   *See id.*

Setoff was not allowed in *Lehman Brothers*, however, because the deposit liability owed by the creditor bank to Lehman Brothers Holdings Inc. *had not been established* by the time of the bankruptcy petition.   The fact that the deposit was supposed to be established through a transfer of account balances within the same bank, as opposed to the payment of a check or wire transfer, is irrelevant.   Even the block quote copied into the appellees' brief makes it clear that the problem with setoff was that no pre-petition debt *existed* before the petition date there.   *See Lehman Bros.*, 404 B.R. at 758-59.   The facts in *Lehman* are entirely different from those in this case, where the Debtor has stipulated that the deposit balance in each of the Accounts was established with Colonial Bank before the Debtor's bankruptcy petition.   A-82.

As the authorities discussed above make clear, the FDIC-Receiver always retained liability to the Debtor for the deposit liabilities, as surety, in the event that BB&T failed to perform. *See* Calamari and Perillo on Contracts, § 18.26. The exercise of the FDIC-Receiver's contractual right to revoke its delegation of responsibility to BB&T is not a transaction with the Debtor and does not transform a pre-petition debt into a post-petition debt. Whether an obligation arises pre-petition or post-petition depends on the timing of the underlying transactions *with the debtor*; liability arises when all of the transactions *with the debtor* that are necessary for liability have occurred. *See United States v. Gerth*, 991 F.2d 1428, 1433 (8th Cir. 1993) (debtor's post-petition assumption of pre-petition contract did not transform contract into a post-petition obligation for setoff purposes); *Braniff Airways, Inc. v. Exxon Company, U.S.A.*, 814 F.2d 1030, 1035-36 (5th Cir. 1987) (for setoff purposes, debt owed by creditor "arose" when debtor made pre-petition fuel prepayment not when bankruptcy court entered post-petition judgment for debtor in adversary proceeding); *United States v. Carey (In re Wade Cook Fin. Corp.)*, 375 B.R. 580, 595 (9th Cir. B.A.P. 2007) (federal tax refund was pre-petition debt owed to debtor even though debtor could not calculate refund amount until events after the petition date had occurred).

Further, contrary to the appellees' arguments, it is not necessary that the "debt sought to be setoff be due when the bankruptcy case is commenced." *Elsinore Shore Assocs. v. First Fidelity Bank (In re Elsinore Shore Assocs.)*, 67 B.R. 926, 946 (Bankr. D.N.J. 1986); *see, e.g., Braniff*, 814 F.2d at 1036 (debt could be setoff although amount owed could not be calculated until after the petition date); *Wade Cook*, 375 B.R. at 595 (tax refund owed to debtor could be setoff even though tax year did not end until after petition date). What is necessary is that there be mutuality "*at the time of setoff*." *U.S. Aeroteam, Inc. v. Delphi Automotive Sys., LLC (In re*

*U.S. Aeroteam, Inc.*), 327 B.R. 852, 864 (Bankr. S.D. Ohio 2005) (emphasis added) (quoting *Braniff*, 814 F.2d at 1036).[4]

Section 9.5 of the P&A Agreement permits the FDIC-Receiver "*[a]t any time*" to "direct [BB&T] to withhold payment of all or any portion of any such deposit," and "return . . . such deposit balance to the Receiver . . ." *See* P&A Agreement, § 9.5. The fact that the FDIC-Receiver's revocation of its delegation to BB&T of pre-petition deposit liabilities might occur after the Debtor's petition date does not change the timing of the underlying deposit transactions between Colonial Bank the Debtor. The last of those occurred before the petition date, and the deposit liabilities therefore are pre-petition debts for setoff analysis. *See Stephenson v. Salisbury (In re Corland Corp.),* 967 F.2d 1069, 1078 (5th Cir. 1992) (subrogation claim "arose" pre-petition where payments were made post-petition on guaranty of debtor's pre-petition note); *Sherman v. First City Bank of Dallas (In re United Sciences of America, Inc.)*, 893 F.2d 720, 725 (5th Cir. 1990) (post-petition credit card chargebacks could be setoff against amounts owed by bank to debtor because debts arose from pre-petition transactions).

## B. Section 553(a)(3) of the Bankruptcy Code Permits Setoff Here

Section 553(a) of the Bankruptcy Code permits a creditor to exercise its setoff right except to the extent that the other provisions of that section expressly limit the right. *See* 11 U.S.C. § 553(a) ("*Except as otherwise provided in this section* and in sections 362 and 363 of

---

[4] Consistent with these cases, a Bankruptcy Act decision cited by the Debtor and the Committee, *Prudential Ins. Co. of Am. v. Nelson (In re Chickamauga Tr. Co.)*, 101 F.2d 441, 443 (6th Cir. 1939), held that "[t]he fact that the debt [owing] to the bankrupt was not due at the date of his adjudication is immaterial." In addition, the court's holding that the debt at issue there did not arise until after the petition date turned on when the creditor accepted proposed obligations, which did not happen until after the petition date. *See id.* at 444. In this case, however, the debt at issue arose before the petition date for the reasons already discussed. Judge Easterbrook's opinion in *Boston & Maine Corp. v. Chicago Pac. Corp.*, 785 F.2d 562 (7th Cir. 1986), is equally inapposite. It concerned a setoff of pre-petition interline balances against post-petition interline balances. *See id.* at 564.

this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case . . .") (emphasis added).[5]

The only provision in section 553(a) that limits the setoff of a "debt" is section 553(a)(3), but that subsection does not prohibit the setoff of a prepetition debt that is subject to a creditor's post-petition revocation of a delegation, as is at issue here.  The Debtor and the Committee admit that the statute contains no such restriction.  *See* Opposition Br. at 29 (admitting that section 553(a)(3) "does not include an analogous provision . . . barring the use for setoff purposes of debt owing to bankrupt debtors that is transferred post-petition").  Instead, they fall back on their frequently repeated assertion that the FDIC-Receiver's exercise of its contract right would constitute the incurrence of new post-petition debt, which ignores black letter law that the FDIC-Receiver always retained liability for the Debtor's deposit balances.

The bankruptcy court committed reversible error when it accepted the appellees' erroneous premise and held that an express statutory restriction on setoff following a post-petition "transfer" of debt "would be superfluous."  *See* Opinion at 19.  As the Supreme Court and the Eleventh Circuit have instructed, "[w]here [a] statute's language is plain, as here, [a court's] sole function is to enforce it according to its terms."  *Inglesby, Falligant, Horne, Courington & Nash, P.C. v. Moore (In re American Steel Prod., Inc.)*, 197 F.3d 1354, 1357 (11th Cir. 1999) (citing *United States v. Ron Pair Enters., Inc.*, 89 U.S. 235, 241 (1989)); s*ee Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 254 (1990) ("When the words of a statute are unambiguous, then, this first canon is also the last:  'judicial inquiry is complete.'").

---

[5] The additional exceptions to setoff that are set forth in sections 362 or 363 of the Bankruptcy Code do not apply.

Retreating, the Debtor and the Committee next contend that post-petition trading in debts owed to a debtor poses the same risk of abuse as post-petition trafficking in claims against that debtor.  Even if this were so, however, the conditional delegation of deposit liabilities under the P&A Agreement is far different than a sale of debt between two third parties.  Further, if Congress had a concern about post-petition debt purchases, it would have included an express restriction on setoff in response to it.  It did not do so, and the differences between "claims" against a debtor and "debts" owed to a debtor may explain why.  The holder of a claim against a bankrupt debtor can usually expect to receive only a fraction of its claim in recovery and therefore has every incentive to sell that claim to the highest bidder.  In contrast, an obligor on a debt owed to a bankrupt debtor can expect to be pursued vigorously by the debtor for payment in full.  The obligor cannot escape such litigation by selling the debt to a third-party, even at a discount, since the only result of that transaction would be a delegation that would afford the bankrupt debtor the choice of two separate obligors to pursue for repayment of its debt.  *See supra* at 3-5.  The hypothetical trade that is posed in a footnote to the opposition brief fails to take either of these factors into account.

Unlike "claims," therefore, Congress was not concerned with post-petition trafficking in "debts" owed to a debtor when it enacted section 553(a)(3) of the Bankruptcy Code.  What Congress was concerned about was the possibility of a pre-petition "build-up" of debt by a creditor acting in collusion with the debtor for the purpose of obtaining a preference ahead of the debtor's other creditors.  *See* H.R. Rep. No. 595, 95th Cong., 1st Sess. 377 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5863, 6333.  Such a pre-petition, preferential build-up was a form of abusive transaction that had been recognized by the courts, including the Supreme Court, for decades. *See New York County Nat'l Bank v. Massey*, 192 U.S. 138, 145-47 (1904) (allowing setoff where

prepetition deposits were accepted in good faith and in the ordinary course of business); *Goldstein v. Franklin Square Nat'l Bank*, 107 F.2d 393, 394 (2d Cir. 1939) (applying rule in classic build-up case).  Pre-petition build-ups of this nature were the circumstances discussed in the section 553(a)(3) decisions cited by the Debtor and the Committee, and none of those decisions involved a post-petition "assumption" of a debt owed to a debtor.[6]

Finally, the Debtor and the Committee assert that allowing setoff by the FDIC-Receiver here "would make no sense."  Opposition Br. at 31.  Such an argument must be addressed to Congress, not the courts, which are charged with applying federal statutes as they are written.  *See supra* at 9.  In any event, what truly would make no sense would be to permit a bankrupt holding company to escape the consequences of setoff – when it was the Debtor alone that had expressly agreed to grant those rights to its wholly-owned subsidiary bank – on no basis other than that it filed for bankruptcy soon after its depository bank failed and was placed into an FDIC receivership.  In enacting the FDIC's statutory right of setoff in 12 U.S.C. § 1822(d), Congress clearly intended to provide a setoff right in these circumstances, and nothing in section 553(a) of the Bankruptcy Code divests the FDIC-Receiver of that right here.

---

[6] *See In re Elcona Homes Corp.*, 863 F.2d 483, 486 (7th Cir. 1988) (quoted by appellees) (section 553(a)(3) was "added in 1978 to close a loophole that had allowed preferences in the form of set offs, and which forbids a set off where the debt was incurred within 90 days before bankruptcy, while the debtor was insolvent, and for the purpose of obtaining a set off against him."); *Herzog v. Mandan Security Bank (In re PRS Prods., Inc)*, 574 F.2d 414, 418 (8th Cir. 1978) (cited by appellees) (affirming claim for preference against bank that accepted pre-petition deposits from debtor while it was insolvent with the intention to setoff against a pre-existing claim); *Gilbert v. Suburban Athletic Club (In re Dayton Circuit Courts No. 2)*, 80 B.R. 434, 440 (Bankr. S.D. Ohio 1987) (cited by appellees) (denying setoff "consistent with the reasoning in decisions denying a bank's right to setoff deposits, where, similar to the electronic funds transfer (EFT) in this proceeding, a bank accepted or 'built up' deposits for the purpose of obtaining a right to setoff"); *see also DuVoisin v. Foster (In re Southern Indus. Banking Corp.)*, 809 F.2d 329, 332 (6th Cir. 1987) (cited in *Elcona* as illustrative) (applying section 553(a)(3) to bar setoff based on prepetition, preferential transactions).

## II.    THE FDIC-RECEIVER'S MOTION FOR STAY RELIEF SHOULD BE GRANTED

The automatic stay provided by section 362 of the Bankruptcy Code "was never intended to affect a creditor's substantive setoff rights. . . . '[T]he stay is finely tuned.  It is not overbroad and it operates only as a procedural delay.  The creditor remains entitled to full satisfaction.'" *Murry v. Commissioner of I.R.S. (In re Murry)*, 15 B.R. 325, 326 (Bankr. E.D. Ark. 1981) (quoting H.R. Rep. No. 95-595 at 123, *reprinted in* 1978 U.S.C.C.A.N. at 6084).  As previously discussed, the bankruptcy court's legal error in denying the FDIC-Receiver stay relief based on its misapplication of section 553(a) of the Bankruptcy Code, standing alone, requires reversal. *See* FDIC-Receiver Br. at 30 (citing *Heintzelman's Truck Center, Inc. v. Ford Motor Co. (In re Bayshore Ford Truck Sales, Inc.)*, 471 F.3d 1233, 1250 (11th Cir. 2006)).

In addition, however, this Court should reject the suggestion made by the Debtor and the Committee that the FDIC-Receiver be prohibited from exercising its undisputed contract rights because of the automatic stay.  *See* Opposition Br. at 42.  Once a creditor has established a right of setoff, which the FDIC-Receiver has done, that creditor has made a *prima facie* showing of "cause" for relief from the automatic stay under Bankruptcy Code section 362(d)(1).  *See In re Ealy*, 392 B.R. 408, 414 (Bankr. E.D. Ark. 2008), *appeal dismissed*, 396 B.R. 20 (8th Cir. B.A.P. 2008); *In re Nuclear Imaging Sys., Inc.,* 260 B.R. 724, 730 (Bankr. E.D. Pa. 2000); *Internal Rev. Serv. v. Orlinksi (In re Orlinski)*, 140 B.R. 600, 603 (Bankr. S.D. Ga. 1991).

The burden of proof therefore shifted to the Debtor to show that relief from the automatic stay was not appropriate.  *See In re Conner Ins. Agency, Inc.*, No. 93-20279 1994 WL 16006138, at *4 (Bankr. S.D. Ga. Nov. 4, 1994).  That burden was not met in this case, where it is clear that the Debtor and the Committee are attempting to use the automatic stay not as a shield but as a sword to gain an advantage over the FDIC-Receiver that they would not be entitled to under

nonbankruptcy law.[7]   Standing alone, such an abuse of the statutory protection afforded by the automatic stay justifies relief.  *See Bernstein v. IDT Corp.*, 76 B.R. 275, 281 (S.D.N.Y. 1987) ("To deny GD the assertion of properly pleaded counterclaims would allow the Trustee to use the stay as a sword instead of a shield."); *Continental Air Lines, Inc. v. Hillblom (In re Continental Air Lines, Inc.)*, 61 B.R. 758, 761 (S.D. Tex. 1986) ("the debtor is not entitled to rely upon the automatic stay or the inherent power of the bankruptcy court as a sword against the minority shareholders of the target corporation"); *Turner Broad. Sys., Inc. v. Sanyo Electric, Inc.*, 33 B.R. 996, 1000 (N.D. Ga. 1983) ("the stay is not designed to be an offensive weapon – a sword – which would permit the debtor to benefit unilaterally from the breaching of a post-bankruptcy petition contract").

## III.   THE CASH COLLATERAL ORDER SHOULD BE REVERSED

The bankruptcy court's misapplication of section 553(a) of the Bankruptcy Code was the stated rationale for its order overruling the FDIC-Receiver's objection to the Debtor's motion to use cash collateral and granting the Debtor's motion.  That order also should be reversed for the reasons stated above and in the FDIC-Receiver's opening brief.

---

[7] The Debtor and the Committee essentially concede that under nonbankruptcy law, the FDIC-Receiver would be allowed to setoff the deposit balances at issue even if its revocation of delegation were delivered to BB&T after the closing under the P&A Agreement.  Indeed, in their opposition brief those appellees contend that the instruction provided by the FDIC-Receiver to BB&T regarding deposit accounts that had been established with Colonial Bank by Taylor Bean & Whitaker Mortgage Corporation demonstrates the proper way for the FDIC-Receiver to "take back accounts transferred under the P&A Agreement," Opposition Br. at 38, even though that instruction was not provided to BB&T until the week after the P&A Agreement.

## CONCLUSION

The rulings of the bankruptcy court should be reversed and this Court should enter an order confirming that the FDIC-Receiver may provide the instructions contemplated under section 9.5 of the P&A Agreement to BB&T with respect to the deposit balances at issue without violating the automatic stay.

Dated:  Montgomery, Alabama
       May 13, 2011

Respectfully submitted,

  /s/ Michael A. Fritz, Sr.
Michael A. Fritz, Sr.
Fritz, Hughes & Hill LLC
1784 Taliaferro Trail, Suite A
Montgomery, Alabama  36117
(334) 215-4422
Email:  michael@fritzandhughes.com

     - and -

John J. Clarke, Jr.
Thomas R. Califano
Spencer Stiefel
DLA Piper LLP (US)
1251 Avenue of the Americas
New York, New York  10020-1104
212-335-4500
Email:  john.clarke@dlapiper.com
       thomas.califano@dlapiper.com
       spencer.stiefel@dlapiper.com

Attorneys for the
Federal Deposit Insurance Corporation
as Receiver for Colonial Bank

## CERTIFICATE OF SERVICE

The undersigned hereby certifies he is one of the attorneys for defendant FDIC-Receiver and that on May 13, 2011, a true and correct copy of the foregoing document was filed with this Court's ECF system in this action, which will cause the electronic service of this document upon all persons registered in this action to receive CM/ECF notifications as of its filing to include the following:

**C. Edward Dobbs**
Parker, Hudson, Rainer & Dobbs, LLP
1500 Marquis Two Tower
285 Peachtree Center Avenue, NE
Atlanta, GA 30303
Email: ced@phrd.com

**Alan R. Glickman**
Schulte Roth & Zabel LLP
919 Third Avenue
New York, NY 10022
Email: alan.glickman@srz.com

**J. David Freedman**
Parker, Hudson, Rainer & Dobbs, LLP
1500 Marquis Two Tower
285 Peachtree Center Avenue, NE
Atlanta, GA 30303
Email:  jdf@phrd.com

**Brian T. Kohn**
Schulte Roth & Zabel LLP
919 Third Avenue
New York, NY 10022
Email: brian.kohn@srz.com

**Rufus T. Dorsey IV**
Parker, Hudson, Rainer & Dobbs, LLP
1500 Marquis Two Tower
285 Peachtree Center Avenue, NE
Atlanta, GA 30303
Email: rtd@phrd.com

**Brian D. Pfeiffer**
Schulte Roth & Zabel
919 Third Avenue
New York, NY 10022
Email: brian.pfeiffer@srz.com

**Mark Douglas Griffin**
State of Alabama Dept. of Revenue
Legal Division
PO Box 320001
Montgomery, AL 36132-0001
Email: mark.griffin@revenue.alabama.gov

**Derek Firth Meek**
Burr & Forman LLP
420 North 20th Street Suite 3400
Birmingham, AL 35203
Email: dmeek@burr.com

**Nicholas Christian Glenos**
Bradley Arant Boult Cummings LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203
Email: cglenos@ba-boult.com

**Marc Peter Solomon**
Burr & Forman LLP
420 North 20th St., Suite 3400
Birmingham, AL 35203
Email: msolomon@burr.com

**Thomas Parker Griffin , Jr.**                    **Robert Barton Rubin**
Bradley Arant Boult Cummings,LLP          Burr & Forman LLP
1819 5th Avenue North                              420 North Twentieth Street 3
Birmingham, AL 35203                             Birmingham, AL 35203
Email: pgriffin@babc.com                         Email: brubin@burr.com


     /s/ Michael A. Fritz, Sr.
        Michael A. Fritz, Sr.