UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| In re:<br><br>THE COLONIAL BANCGROUP, INC.,<br><br>Debtor.<br><br>FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for Colonial Bank,<br><br>Appellant<br><br>v.<br><br>THE COLONIAL BANCGROUP, INC., et al.,<br><br>Appellees. | Case No.  2:11-cv-0133 (MHT)<br><br><u>Bankruptcy Appeal</u> |

SUR-REPLY OF THE COLONIAL BANCGROUP, INC. TO ADDRESS THE
NEW ARGUMENT MADE IN THE FDIC'S REPLY BRIEF

C. Edward Dobbs
Rufus T. Dorsey, IV
J. David Freedman
**PARKER, HUDSON, RAINER & DOBBS LLP**
1500 Marquis Two Tower
285 Peachtree Center Avenue, N.E.
Atlanta, Georgia  30303
Telephone:  404-523-5300
Facsimile:  404-522-8409

*Attorneys for the Debtor,*
*The Colonial BancGroup, Inc.*

Dated:  July 18, 2011

In accordance with the order entered by the Court on July 11, 2011 [Doc. No. 35], Appellee The Colonial BancGroup, Inc. (the "<u>Debtor</u>") respectfully submits this sur-reply to address the new argument made in the reply brief (the "<u>Reply</u>") [Doc. No. 30] of the Federal Deposit Insurance Corporation, as receiver for Colonial Bank (the "<u>FDIC</u>"), on its appeal of the Bankruptcy Court's denial of the FDIC's motion under section 362(d) of the Bankruptcy Code for stay relief.[1]

**ARGUMENT**

The FDIC seeks relief from the bankruptcy automatic stay to compel Branch Banking & Trust Company ("<u>BB&T</u>") to transfer back to the FDIC the Debtor Deposits that the FDIC transferred to BB&T pursuant to a Purchase and Assumption Agreement dated August 14, 2009 (the "<u>P&A Agreement</u>"). The FDIC's avowed objective is to put itself in a position post-petition to do what it failed to do pre-petition and cannot do now -- set off the deposit obligation of BB&T to the Debtor against the alleged, but heretofore unproven, pre-petition obligations of the Debtor to Colonial Bank. In essence, the FDIC requests relief from stay to manufacture the necessary mutuality for setoff purposes when this mutuality has not existed since the transfer to BB&T of the Debtor Deposits was effected on August 14, 2009, and cannot be created now by calling back the Debtor Deposits from BB&T.

In its Reply, the FDIC seizes upon an entirely new argument -- one not in its opening brief on this appeal or in the proceedings before the Bankruptcy Court -- that the Debtor Deposits were only "delegated" (not transferred) to and assumed by BB&T because common law requires a transferor of a debt to remain liable as a surety in the absence of consent by the

---

[1] As a result of the bankruptcy court's confirmation of the Debtor's Chapter 11 plan of liquidation, the Official Committee of Unsecured Creditors (the "<u>Committee</u>") no longer exists and will not be submitting any further pleadings or making any appearances in this appeal. All capitalized terms used herein, unless otherwise defined, shall have the meanings ascribed to such terms in the Opposition Brief jointly submitted by the Debtor and the Committee. [Doc. No. 20.]

2

obligee to the transfer. (FDIC Reply at 1, 3-5.) However, the FDIC's new claim fails on a number of levels.

First, the new argument is contrary to the clear and unambiguous terms of the P&A Agreement, to BB&T's understanding of the transaction thereunder, to the FDIC's own pronouncements about the transaction with BB&T, and to the FDIC's and BB&T's conduct since the closing of the transaction. Second, the common law principle the FDIC relies upon does not apply to the transaction between BB&T and the FDIC under the P&A Agreement. Lastly, even if the Court were to conclude that common law did apply, and the FDIC is granted stay relief, the mutuality required for the FDIC to exercise setoff rights is still not present. The FDIC has failed to demonstrate its entitlement to stay relief, and the orders the FDIC now appeals from should therefore be affirmed.

A. **Neither the P&A Agreement nor the Record Supports the FDIC's New Argument for Stay Relief.**

In its Reply, the FDIC argues for the first time during its nearly two-year long quest for stay relief that "[t]he P&A Agreement *delegated* to BB&T, but did not 'extinguish,' the FDIC-Receiver's liability to the Debtor for the deposit balances at issue." (FDIC Reply at 3.) (emphasis added). Yet, the FDIC points to nothing in the P&A Agreement which states that the Debtor Deposits were merely delegated to BB&T, or that the FDIC would remain a surety or otherwise liable for those deposits. The FDIC's failure to do so is not surprising, inasmuch as the P&A Agreement does not even use the word "delegate." To the contrary, the P&A Agreement is entitled "Purchase and Assumption Agreement, Whole Bank, All Deposits," identifies BB&T as the "Assuming Bank," and clearly provides (in Section 2.1, entitled

"Liabilities Assumed by Assuming Bank") that BB&T "expressly assumes . . . and agrees to pay, perform and discharge" the deposit accounts, including the Debtor Deposits. (J.A. at 206.)[2]

The FDIC also offers no evidence to support the notion that the transfer to BB&T was merely a delegation that left the FDIC with remaining liability for the deposits, and there is no such evidence.[3] To the contrary, as Appellees' Opposition Brief [Doc. No. 20] reflects, the evidence confirms that BB&T assumed all of the liability associated with the Debtor Deposits.[4] (Opp. Br. at 36-37.) BB&T's senior vice-president testified, without contradiction, that "BB&T has been responsible for these deposits as a liability and . . . they are BB&T's deposits." (J.A. at 373.) BB&T's counsel expressly confirmed to the Bankruptcy Court that "it is our position that these are assumed liabilities of BB&T" (J.A. at 186-87), and BB&T also advised depositors that it had "acquired the deposit accounts of Colonial Bank." (J.A. at 329-34.)

BB&T, in its Opposition Brief [Doc. No. 25], has forcefully disputed the position taken by the FDIC in this appeal:

> However, BB&T does want to clarify (and hereby reserves its rights, claims, and interests as necessary) that BB&T **did** assume the subject Accounts as part of the Assumed Deposits pursuant to the P&A Agreement dated August 14, 2009 -- and the record is indisputably clear as to this. As set forth in the statement of stipulated facts filed by the FDIC-Receiver and the Debtor [D.I. 965] (the "Stipulated Facts") with respect to the FDIC-Receiver's motion for stay relief made subject of this appeal [D.I. 922] (the "Motion for Relief"), BB&T assumed the Accounts pursuant to the P&A Agreement and has controlled and maintained the subject Accounts since that day. . .

---

[2] Citations to "J.A. at __" refer to pages within the Joint Appendix of Appellees The Colonial BancGroup, Inc. and the Official Committee of Unsecured Creditors, dated April 26, 2011.

[3] This is not surprising since this "delegation" argument was never made to the Bankruptcy Court.

[4] The FDIC did not assert otherwise in its opening brief, but nonetheless argues in its Reply that it did not abandon any claim that BB&T never assumed liability for the Debtor Deposits. (FDIC Reply at 5 n.2.) However, the portions of its opening brief that the FDIC cites argue only that the FDIC has the right to *take back* the deposits under the P&A Agreement. That is far different from arguing that BB&T never assumed the deposits in the first place.

> Any assertions by the FDIC-Receiver (or any other party) that BB&T did not assume the Accounts, or that the Accounts "were never assumed" by BB&T, are false as established by the clear evidence in the record.

(BB&T Br. at 6-7) (emphasis in original). The FDIC stands alone in contending that the Debtor Deposits were only "delegated" to BB&T.[5]

Indeed, the FDIC's new "delegation" argument is inconsistent with its own public pronouncements on the effect of the transaction with BB&T under the P&A Agreement. The FDIC told Colonial Bank depositors on its website that "[a]ll deposit accounts have been transferred to BB&T" (J.A. at 386), and issued a press release stating: "To protect the depositors, the FDIC entered into a purchase and assumption agreement with [BB&T] to assume all of the deposits of Colonial Bank." (J.A. at 383.) Nothing in any of these public pronouncements remotely suggests that the FDIC intended merely to "delegate" any liability for Colonial Bank deposits (including the Debtor Deposits) to BB&T and to retain any liability as a surety or otherwise for the Debtor Deposits. These pronouncements evidence the FDIC's intention for BB&T to assume, and thereby be responsible for, the obligations with respect to the Debtor Deposits.

The FDIC's position is also at odds with the actions of the FDIC and BB&T following the closing of the transaction under the P&A Agreement. As of August 14, 2009, BB&T started paying deposit insurance premiums to the FDIC, in its corporate capacity, with respect to the same Debtor Deposits to insure BB&T's depository liability to the Debtor. (*See* J.A. at 5; BB&T Br. at 10; Bankr. Doc. No. 965 at ¶ 33.)[6] The FDIC would have this Court

---

[5] In light of BB&T's position, it is odd that the FDIC contends that BB&T's Opposition Brief is "entirely consistent" with that of the arguments advanced by the FDIC. (FDIC Reply at 5 n.3.)

[6] The joint stipulated facts submitted by the FDIC and the Debtor to the Bankruptcy Court state that, "Since the closing of Colonial Bank, BB&T has included the balances of the Accounts in calculating its deposit insurance premiums paid to the FDIC." [Bankr. Doc. No. 965 at ¶ 33.]

believe that the FDIC, in its receiver capacity, is liable as a surety on the Debtor Deposits while the FDIC, in its corporate capacity, insures the Debtor Deposits at BB&T.

The only language in the P&A Agreement the FDIC relies upon to support its "delegation" argument is Section 9.5. This section, however, offers no support for the FDIC's position. Section 9.5 does not use the terms "delegate" or "delegation" and merely purports to provide the FDIC with the option to direct BB&T to return to the FDIC any deposit account assumed by BB&T which the FDIC designates. Upon such direction by the FDIC and BB&T's return of the deposit to the FDIC, BB&T "shall be discharged from any further liability to such depositor with respect to such returned deposit balance." As is clear from the record of this case, the FDIC never directed BB&T to return any of the Debtor Deposits to the FDIC. An unexercised contractual right to call back bank deposits assumed by BB&T (and thereby discharge BB&T from any further liability for such deposits) is not the equivalent of a mere "delegation" of the obligations with respect to such deposits. Therefore, not even Section 9.5 of the P&A Agreement supports the FDIC's new theory for stay relief.

**B.    The FDIC's New Argument That It Could Not Have Assigned Liability for the Debtor Deposits Is Incorrect.**

Relying upon cases discussing common law contract principles, the FDIC contends that the obligation it owed to the Debtor on account of the Debtor Deposits could not be assumed by BB&T without the Debtor's consent.

The cases cited by the FDIC, and the common law principle that a debt cannot be assumed without the obligee's consent, are inapposite. Not a single authority relied on by the FDIC deals with the transfer of the deposit accounts of a failed bank. In fact, transfers by the FDIC as receiver to an assuming depository bank are governed by federal statute, not by state common law. Federal law does not require any consent or approval for such transfer by any

6

person, including the depositor, other than the approval of the federal banking agency for the assuming depository institution.  *See* 12 U.S.C. § 1821(d)(2)(G).[7]  Specifically, that statute provides that the FDIC as receiver may "transfer any asset or liability of the institution in default . . . without any approval, assignment, or consent with respect to such transfer."  The Debtor's consent to BB&T's assumption of the obligations underlying the Debtor Deposits was not required to relieve the FDIC of any further obligation to the Debtor on account of these deposits.

Even if the Debtor's consent had been required for the assignment of the Debtor Deposits to BB&T (and it clearly was not) the FDIC has made no showing of a lack of consent. The FDIC argues that the Debtor's lack of consent is evidenced by the fact that the Debtor has refused to forego a claim against the FDIC with respect to the Debtor Deposits.  (FDIC Reply at 3-4.)  However, as is plain from the FDIC's own brief, the Debtor's claim would arise *only* if the FDIC is allowed to take certain actions with respect to the Debtor Deposits, such as trying to cause a transfer of these deposits back from BB&T, the Debtor's depository bank, to the Colonial Bank receivership in an effort to manufacture setoff rights post-petition.  (*Id.* at 4 (reflecting that the Debtor's claim only arises "in the event the FDIC-Receiver purports to exercise any rights it may assert under the P&A Agreement or otherwise with respect to the Deposit Accounts."))  The Debtor never has taken the position that the FDIC as receiver currently has any obligations with respect to the Debtor Deposits, as surety or otherwise.

### C. Even if the FDIC Were a Surety, That Still Would Not Permit Setoff.

Even if the FDIC were correct that it remains liable for the Debtor Deposits as a surety, which it is not, that contingent liability as a surety would not be sufficient to create a right of setoff in favor of the FDIC.

---

[7] No party has ever suggested that the federal banking agency for BB&T failed to approve the transfers effected under the P&A Agreement.

A surety's liability "arises only when the [primary obligor] fails to discharge his duties or to respond in damages for that failure." *See, e.g., Carolina Cas. Ins. Co. v. Yeates*, 584 F.3d 868, 881 (10th Cir. 2009) (*quoting* PETER A. ALCES, THE LAW OF SURETYSHIP AND GUARANTY, § 1.1 (2009)). Even under the FDIC's new theory, BB&T would be the primary obligor for the Debtor Deposits, and any exposure the FDIC has as a surety would not be triggered until BB&T fails to discharge its duties. There is no evidence, or even an allegation, that BB&T is unable to discharge its duties to the Debtor with respect to the Debtor Deposits.[8] Thus, even if the FDIC potentially could be liable for payment as a surety, no such liability has arisen; and, even if that liability is triggered, there would not be the mutuality needed for the FDIC to be entitled to assert a setoff against the Debtor Deposits.

The FDIC is well aware that its purported liability as a surety is not a basis for setoff. That is why the FDIC is seeking stay relief to have the Debtor Deposits returned by BB&T. It is the return of those deposits that would create an obligation owing to the Debtor by the FDIC, and that obligation unquestionably would arise post-petition.[9]

## CONCLUSION

For all of the foregoing reasons, the Debtor respectfully requests that the FDIC's new "delegation" argument be rejected. As to the FDIC's other arguments on appeal, the Debtor respectfully refers the Court to its Opposition Brief.

---

[8] Although the FDIC has instructed BB&T to withhold payment of the Debtor Deposits (J.A. at 17-18), the FDIC cannot thereby create a liability for itself, and it has never claimed that it can do so.

[9] The FDIC also attempts to use its new delegation argument to support its theory that section 553(a) permits a setoff of debts that are transferred post-petition. According to the FDIC, there is no danger that so construing section 553(a) would encourage debt trading to sell setoff rights because the transferor supposedly would fear continuing liability for the debt. (FDIC Reply at 10.) According to the FDIC, the transferor would be concerned that the bankrupt obligee would have "the choice of two separate obligors to pursue for repayment of its debt." (*Id.*) However, that would not be true even under the FDIC's own theory, inasmuch as the transferor at most would be a surety and would have only a secondary liability.

DATED:  July 18, 2011

        Respectfully submitted,

        /s/ Rufus T. Dorsey, IV
        C. Edward Dobbs
        Rufus T. Dorsey, IV
        J. David Freedman
        **PARKER, HUDSON, RAINER & DOBBS LLP**
        1500 Marquis Two Tower
        285 Peachtree Center Avenue, N.E.
        Atlanta, Georgia  30303
        Telephone:  404-523-5300
        Facsimile:  404-522-8409

        *Attorneys for the Debtor*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing document was electronically served on July 18, 2011, by transmission of Notices of Electronic Filing generated by CM/ECF to persons registered as of issuance of filing, addressed as follows:

> Alan R. Glickman (alan.glickman@srz.com)
>
> Brian D. Pfeiffer (brian.pfeiffer@srz.com)
>
> Brian T. Kohn (brian.kohn@srz.com)
>
> C. Edward Dobbs (ced@phrd.com)
>
> Derek F. Meek (dmeek@burr.com)
>
> J. David Freedman (jdf@phrd.com)
>
> John J. Clarke, Jr. (john.clarke@dlapiper.com)
>
> Marc P. Solomon (msolomon@burr.com)
>
> Mark D. Griffin (mark.griffin@revenue.alabama.gov)
>
> Michael A. Fritz, Sr. (bankruptcy@fritzandhughes.com)
>
> N. Christian Glenos (cglenos@ba-boult.com)
>
> Robert B. Rubin (brubin@burr.com)
>
> T. Parker Griffin, Jr. (pgriffin@babc.com)
>
> Thomas R. Califano (thomas.califano@dlapiper.com)

/s/ Rufus T. Dorsey, IV
Rufus T. Dorsey, IV

*Attorney for the Debtor*