UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| In re:<br><br>**THE COLONIAL BANCGROUP, INC.,**<br><br>    Debtor.<br><br>**FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for Colonial Bank,**<br><br>    Appellant,<br><br>    v.<br><br>**THE COLONIAL BANCGROUP, INC., et al.,**<br><br>    Appellees. | Case No. 2:11-cv-0133 (MHT)<br><br>**<u>Bankruptcy Appeal</u>** |

**RESPONSE OF APPELLANT FDIC-RECEIVER
TO APPELLEE'S SURREPLY**

Michael A. Fritz, Sr.
michael@fritzandhughes.com
Fritz, Hughes & Hill LLC
1784 Taliaferro Trail, Suite A
Montgomery, Alabama 36117
(334) 215-4422

John J. Clarke, Jr.
Thomas R. Califano
DLA Piper LLP (US)
1251 Avenue of the Americas
New York, New York 10020-1104
(212) 335-4500

Attorneys for the
 Federal Deposit Insurance Corporation,
 as Receiver for Colonial Bank

Dated: July 22, 2011

# Table of Authorities

                                                                                                                                            Page

## Cases

*Howe v. Varity,*
    36 F.3d 746 (8th Cir. 1994) ...................................................................................................3

*In re Washington Capital Aviation & Leasing,*
    156 B.R. 167 (Bankr. E.D. Va. 1993)..................................................................................1, 4

*Transp. & Transit Assocs. v. Morrison Knudsen Corp.,*
    255 F.3d 397 (7th Cir. 2001) ...................................................................................................1

*Waterview Mgmt. Co. v. R.T.C.,*
    105 F.3d 696 (D.C. Cir. 1997)..................................................................................................3

## Statutes

12 U.S.C. § 1821(d)(2)(G)................................................................................................................3

## Other Authorities

Joseph M. Perillo, *Calamari and Perillo on Contracts*, (5th ed. 2003)......................................2, 3

Restatement (Second) of Contracts, § 318(3) (1981) .......................................................................1

In accordance with this Court's Order entered on July 11, 2011, appellant Federal Deposit Insurance Corporation, as receiver for Colonial Bank (the "FDIC-Receiver"), respectfully submits this response to the surreply filed by appellee The Colonial BancGroup, Inc. (the "Debtor").

In its surreply, the Debtor does not dispute the "entrenched" principle of common law that "[a] party subject to a contractually created obligation ordinarily cannot divest itself of liability by substituting another in its place . . ." and, as a result, the original obligor "remains ultimately liable until discharged by performance or otherwise." *In re Washington Capital Aviation & Leasing*, 156 B.R. 167, 175 n.3 (Bankr. E.D. Va. 1993); *see Transp. & Transit Assocs. v. Morrison Knudsen Corp.*, 255 F.3d 397, 400 (7th Cir. 2001); Restatement (Second) of Contracts, § 318(3) (1981). This established legal principle is indisputable. None of the Debtor's arguments to evade the determinative effect of this rule of law can save it from reversal.

*First*, contrary to the Debtor's primary argument, the purchase and assumption agreement dated as of August 14, 2009 (the "P&A Agreement") between the FDIC-Receiver and Branch Banking and Trust Company ("BB&T") expressly recognizes that the FDIC-Receiver retained liability for Colonial Bank deposit balances notwithstanding the delegation of those obligations to BB&T. In this regard, section 9.4 of the P&A Agreement provides:

> **9.4. Payment of Deposits.** In the event any depositor does not accept the obligation of the Assuming Bank to pay any Deposit liability of the Failed Bank assumed by the Assuming Bank pursuant to this Agreement and asserts a claim against the Receiver for all or any portion of such Deposit liability, the Assuming Bank agrees on demand to provide the Receiver funds sufficient to pay such claim in an amount not in excess of the Deposit liability reflected on the books of the Assuming Bank at the time such claim is made. Upon payment by the Assuming Bank to the Receiver of such amount, the Assuming Bank shall be discharged from any further obligation under this Agreement to pay any such depositor the amount of such Deposit liability paid to the Receiver.

P&A Agreement, § 9.4 (A 124) (emphasis added). The very existence of section 9.4 demonstrates the FDIC-Receiver's awareness that its delegation of deposit liabilities to BB&T under the P&A Agreement would not "discharge" or "extinguish" its liability to Colonial Bank depositors.

*Second*, it is entirely beside the point that BB&T has acknowledged that it "assumed" deposit liabilities and that the P&A Agreement provided for such an "assumption." The common law rule recognizes that an obligor can contract with a third party to assume its contractual obligations. The rule also recognizes, however, that the person to whom the obligation is owed can continue to insist on performance by the original obligor. *See* Joseph M. Perillo, *Calamari and Perillo on Contracts*, § 18.26 (5th ed. 2003) ("Since A continues to remain liable and C is liable to B under a third party beneficiary theory, it follows that B has a claim against both A and C but is entitled to only one satisfaction."). That is why the Debtor is simply wrong when it argues that the P&A Agreement "discharged" or "extinguished" the FDIC-Receiver's liability to Colonial Bank depositors. To the contrary, *both* the FDIC-Receiver and BB&T have liability for those obligations – but only for a single satisfaction.

*Third*, whether or not the P&A Agreement used the term "delegation," it is a fact that the effect of the agreement was to delegate to BB&T the FDIC-Receiver's responsibilities for Colonial Bank deposit liabilities and not to "assign" them. As Professor Perillo has written, the distinction between an assignment and a delegation "stems from the distinction between rights and duties. An assignment transfers rights. A delegation, in contrast, is the appointment of another to perform one's duties." *Calamari and Perillo on Contracts*, § 18.1. The FDIC-Receiver regrets that it was not clearer in its earlier briefing that a delegation is at issue, but as Professor Perillo also has noted, "[c]ourts and lawyers generally are not always careful to make

this distinction and are prone to use the word 'assignment' (a word of art) inartfully, frequently intending to encompass the distinct concepts of assignment and delegation." *Id.*

*Fourth*, and similarly, the common law rule is not altered by 12 U.S.C. § 1821(d)(2)(G) in the case of failed banks. That subsection of the Federal Deposit Insurance Act makes clear that a contractual counterparty may not *prevent* the FDIC-Receiver from assigning an asset or delegating a liability of a failed bank. However, nothing in that provision exculpates the FDIC-Receiver from its retained liability for such a delegated obligation under the common law.[1] *See Waterview Mgmt. Co. v. R.T.C.*, 105 F.3d 696, 698 (D.C. Cir. 1997) ("Federal law simply provides that the RTC can transfer the asset held by the failed institution without consent. State contract law thus defines the nature of the asset that federal law allows the agency to transfer without consent."). Indeed, if section 1821(d)(2)(G) had the meaning the Debtor advocates, there would have been no need for the FDIC-Receiver to protect itself through a contractual provision with its assuming bank in the form of section 9.4 of the P&A Agreement.

*Finally*, mutuality of obligation exists because the Debtor (like other Colonial Bank depositors) can pursue recovery of its deposit balance from either the FDIC-Receiver or BB&T. *See Calamari and Perillo on Contracts*, § 18.26; *see, e.g., Howe v. Varity*, 36 F.3d 746, 756 (8th Cir. 1994) (allowing plaintiffs to proceed against original obligor notwithstanding delegation of

---

[1] Section 1821(d)(2)(G)(i) provides:

**(i)** In general. The Corporation may, as conservator or receiver—

   **(I)** merge the insured depository institution with another insured depository institution; or

   **(II)** subject to clause (ii), transfer any asset or liability of the institution in default (including assets and liabilities associated with any trust business) without any approval, assignment, or consent with respect to such transfer.

12 U.S.C. § 1821(d)(2)(G)(i).

obligation). Therefore, it is not the case (as the Debtor argues) that "any exposure the FDIC has . . . would not be triggered until BB&T fail[ed] to discharge its duties." *See* Debtor Surreply at 8. In this respect, the co-obligor relationship between the FDIC-Receiver and BB&T differs from the relationship between a principal and its surety. However, as in the case of a surety, the FDIC-Receiver's liability would be discharged by BB&T's performance. *See Washington Capital Aviation & Leasing*, 156 B.R. at 175 n.3. That potential extinguishment of the obligation, however, does not alter the mutuality of obligation that exists between the Debtor and the FDIC-Receiver now.

## CONCLUSION

The rulings of the bankruptcy court should be reversed and this Court should enter an order confirming that the FDIC-Receiver may provide the instructions contemplated under section 9.5 of the P&A Agreement to BB&T with respect to the deposit balances at issue without violating the automatic stay.

Dated: Montgomery, Alabama  
   July 22, 2011

Of Counsel:

John J. Clarke, Jr.  
Thomas R. Califano  
Spencer Stiefel  
DLA Piper LLP (US)  
1251 Avenue of the Americas  
New York, New York 10020-1104  
212-335-4500

Respectfully submitted,

 /s/ Michael A. Fritz, Sr.  
Michael A. Fritz, Sr.  
Fritz, Hughes & Hill LLC  
1784 Taliaferro Trail, Suite A  
Montgomery, Alabama 36117  
(334) 215-4422  
Email: michael@fritzandhughes.com

Attorneys for the  
 Federal Deposit Insurance Corporation,  
 as receiver for Colonial Bank

4

**CERTIFICATE OF SERVICE**

        The undersigned hereby certifies he is one of the attorneys for defendant FDIC-Receiver and that on July 22, 2011, a true and correct copy of the foregoing document was filed with this Court's ECF system in this action, which will cause the electronic service of this document upon all persons registered in this action to receive CM/ECF notifications as of its filing to include the following:

**C. Edward Dobbs**
Parker, Hudson, Rainer & Dobbs, LLP
1500 Marquis Two Tower
285 Peachtree Center Avenue, NE
Atlanta, GA 30303
Email: ced@phrd.com

**Alan R. Glickman**
Schulte Roth & Zabel LLP
919 Third Avenue
New York, NY 10022
Email: alan.glickman@srz.com

**J. David Freedman**
Parker, Hudson, Rainer & Dobbs, LLP
1500 Marquis Two Tower
285 Peachtree Center Avenue, NE
Atlanta, GA 30303
Email:  jdf@phrd.com

**Brian T. Kohn**
Schulte Roth & Zabel LLP
919 Third Avenue
New York, NY 10022
Email: brian.kohn@srz.com

**Rufus T. Dorsey IV**
Parker, Hudson, Rainer & Dobbs, LLP
1500 Marquis Two Tower
285 Peachtree Center Avenue, NE
Atlanta, GA 30303
Email: rtd@phrd.com

**Brian D. Pfeiffer**
Schulte Roth & Zabel
919 Third Avenue
New York, NY 10022
Email: brian.pfeiffer@srz.com

**Mark Douglas Griffin**
State of Alabama Dept. of Revenue
Legal Division
PO Box 320001
Montgomery, AL 36132-0001
Email: mark.griffin@revenue.alabama.gov

**Derek Firth Meek**
Burr & Forman LLP
420 North 20th Street Suite 3400
Birmingham, AL 35203
Email: dmeek@burr.com

**Nicholas Christian Glenos**
Bradley Arant Boult Cummings LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203
Email: cglenos@ba-boult.com

**Marc Peter Solomon**
Burr & Forman LLP
420 North 20th St., Suite 3400
Birmingham, AL 35203
Email: msolomon@burr.com

**Thomas Parker Griffin , Jr.**
Bradley Arant Boult Cummings,LLP
1819 5th Avenue North
Birmingham, AL 35203
Email: pgriffin@babc.com

**Robert Barton Rubin**
Burr & Forman LLP
420 North Twentieth Street 3
Birmingham, AL 35203
Email: brubin@burr.com

/s/ Michael A. Fritz, Sr.
Michael A. Fritz, Sr.