UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| In re:<br><br>**THE COLONIAL BANCGROUP, INC.,**<br><br>Debtor. | |
| **FEDERAL DEPOSIT INSURANCE CORPORATION,** as Receiver for Colonial Bank,<br><br>Appellant,<br><br>v.<br><br>**THE COLONIAL BANCGROUP, INC.,** et al.,<br><br>Appellees. | **Case No. 2:11-cv-0133 (MHT)**<br><br><u>**Bankruptcy Appeal**</u> |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
FDIC-RECEIVER'S MOTION FOR A STAY PENDING APPEAL
AND EMERGENCY REQUEST FOR INTERIM RELIEF**

                                                Michael A. Fritz, Sr.
                                                michael@fritzandhughes.com
                                                Fritz, Hughes & Hill LLC
                                                1784 Taliaferro Trail, Suite A
                                                Montgomery, Alabama  36117
                                                (334) 215-4422

                                                John J. Clarke, Jr.
                                                Thomas R. Califano
                                                DLA Piper LLP (US)
                                                1251 Avenue of the Americas
                                                New York, New York  10020-1104
                                                (212) 335-4500

Dated:  December 8, 2011                    Attorneys for the
                                                Federal Deposit Insurance Corporation,
                                                as Receiver for Colonial Bank

**Table of Contents**

Page

PRELIMINARY STATEMENT ............................................................................................... 1

PROCEDURAL BACKGROUND.......................................................................................... 4

ARGUMENT ............................................................................................................................. 8

I.   A STAY PENDING APPEAL IS WARRANTED AND SHOULD BE
     ENTERED BY THIS COURT PURSUANT TO BANKRUPTCY RULE 8005 ............. 8

     A.   Likelihood of Success on the Merits..................................................................... 8

     B.   Irreparable Harm to the FDIC-Receiver Absent a Stay ...................................... 11

     C.   No Substantial Harm to Other Interested Parties................................................ 12

     D.   The Public Interest Favors a Stay ........................................................................ 14

     E.   No Bond Is Required ........................................................................................... 15

II.  EMERGENCY INTERIM RELIEF SHOULD BE GRANTED TO MAINTAIN
     THE STATUS QUO UNTIL THE MOTION FOR STAY CAN BE DECIDED ........... 15

CONCLUSION........................................................................................................................ 17

## **Table of Authorities**

Page(s)

### Cases

*Caplan v. Fellheimer Eichen Braverman & Kaskey*,
  69 F.3d 828 (3d Cir. 1995)..................................................................................................13

*Cooper-Jarrett, Inc. v. Central Transport, Inc.*,
  726 F.2d 93 (3d Cir. 1984)....................................................................................................8

*Deckert v. Independent Steel Co.*,
  311 U.S. 282 (1940)............................................................................................................11

*Forest Oaks LLC v. SPCP Group LLC (In re Forest Oaks LLC)*,
  Civ. A. No. 10-00178-CB-M, 2010 WL 1904340 (S.D. Ala. May 10, 2010)......................8

*Garcia-Mir v. Meese*,
  781 F.2d 1450 (11th Cir.1986) .............................................................................................8

*Hoxworth v. Blinder, Robinson & Co., Inc.*,
  903 F.2d 186 (3d Cir. 1990)................................................................................................12

*In re Lehman Bros. Holdings, Inc.*,
  404 B.R. 752 (Bankr. S.D.N.Y. 2009)..................................................................................9

*In re Washington Capital Aviation & Leasing*,
  156 B.R. 167 (Bankr. E.D. Va. 1993)...................................................................................9

*MNI Mgmt., Inc v. Wine King, LLC*,
  542 F. Supp. 2d 389 (D.N.J. 2008) ...............................................................................13, 14

*Official Comm. of Unsecured Creditors v. Mfrs. & Traders Tr. Co. (In re Bennett
  Funding Group, Inc)*, 146 F.3d 136 (2d Cir. 1998) .............................................................9

*Salt Lake Tribune Publ'g Co., LLC v. AT&T Corp*,
  320 F.3d 1081 (10th Cir. 2003) ..........................................................................................13

*Transportation & Transit Assocs. v. Morrison Knudsen Corp.*,
  255 F.3d 397 (7th Cir. 2001) ................................................................................................9

*United States v. Fleet Bank (In re Calore Exp Co., Inc.)*,
  288 F.3d 22 (1st Cir. 2002).................................................................................................11

*United States v. Munsey Trust Co.*,
  332 U.S. 234 (1947)............................................................................................................11

*Wabash Valley Power Ass'n Inc. v. United States (In re Wabash Valley Power Ass'n Inc.)*, 114 B.R. 613 (S.D. Ind. 1989) ...................................................................12

### Statutes and Rules

11 U.S.C. § 362(d) ........................................................................................................................4

11 U.S.C. § 363(p)(1) ..................................................................................................................12

11 U.S.C. § 506(a) .......................................................................................................................11

11 U.S.C. § 553 ...................................................................................................................8, 9, 10

12 U.S.C. 1822(a) ........................................................................................................................15

12 U.S.C. § 1821(d)(11) ..............................................................................................................14

12 U.S.C. § 1831*o*(a)(1) ..............................................................................................................14

Fed. R. Bank. P. 8005 ........................................................................................................ *passim*

Fed. R. Bank. P. 8011(d) .............................................................................................................16

### Other Authorities

Charles Alan Wright, Mary Kay Kane, Richard L. Marcus, Arthur R. Miller, *Federal Practice & Procedure* § 2948.1 .................................................................................13

Joseph M. Perillo, Calamari and Perillo on Contracts, § 18.26 (5th ed. 2003) ...............................9

Restatement (Second) of Contracts, § 318(3) ................................................................................9

Appellant Federal Deposit Insurance Corporation, as receiver for Colonial Bank (the "FDIC-Receiver"), respectfully submits this memorandum of points and authorities in support of its motion pursuant to Rule 8005 of the Federal Rules of Bankruptcy Procedure for a stay pending its appeal regarding its setoff rights with respect to the balances in six deposit accounts and its related emergency request for interim relief pending the Court's decision on that motion for a stay.

In accordance with Bankruptcy Rule 8005, the FDIC-Receiver first sought the relief requested herein from the bankruptcy court, which granted the FDIC-Receiver's motion for a stay pending appeal in an agreed order entered on January 28, 2011.  *See* Declaration of John J. Clarke, Jr. dated December 7, 2011 ("Clarke Decl."), Exh. 1.  However, in a more recent order entered on December 1, 2011, the bankruptcy court denied the FDIC-Receiver any further stay pending appeal with respect to one of six disputed accounts, and it permitted appellee The Colonial BancGroup, Inc. (the "Debtor") to withdraw the entire remaining balance of its alleged "operating" account, in the approximate amount of $5.4 million.  *See* Clarke Decl., Exhs. 2 & 3.

In its December 1st order, the bankruptcy court provided for an interim stay of its order until December 15, 2011 to permit the FDIC-Receiver the opportunity to request emergency interim relief from this Court.  Clarke Decl., Exh. at 6.  By this motion, therefore, the FDIC-Receiver seeks both (1) a stay of any transfer or disbursement from any of the six disputed deposit accounts until this appeal has been resolved and (2) the imposition of an interim stay effective no later than December 15, 2011 until the motion for a stay pending appeal can be decided by the Court.

## PRELIMINARY STATEMENT

This appeal is fully briefed and oral argument has been scheduled.  At issue on the merits is whether the FDIC-Receiver has setoff rights against the balances in six demand deposit

accounts that were established with Colonial Bank in the name of the Debtor before the Bank's failure.  In the orders below, which were entered in January 2011, the bankruptcy court concluded that the FDIC-Receiver had no setoff rights with respect to the account balances due to an alleged lack of mutuality.  For that reason alone, the bankruptcy court also granted the Debtor's motion to access the balance in its alleged "operating" account.  As shown in the FDIC-Receiver's briefs on appeal, the underlying bankruptrcy court orders are erroneous and should be reversed.

In January, within hours after the bankruptcy court entered its orders, the Debtor attempted to transfer the entire balance of its "operating" account – approximately $12.5 million at the time – from Branch Banking and Trust Co. ("BB&T") to another bank.  The FDIC-Receiver viewed these actions as a transparent attempt by the Debtor to deprive it of a remedy with respect to that deposit balance if it is successful in this appeal.  The FDIC-Receiver immediately filed an emergency motion in the bankruptcy court for a stay pending appeal, and that motion was granted by the bankruptcy court in an agreed order entered on January 28, 2011.  *See* Clarke Decl., Exh. 1.

Under the January 28th stay order, the Debtor was prohibited from transferring any of the deposit balances from BB&T to another bank and it was barred from using any of the account balances while this appeal was pending, with one exception:  the Debtor was permitted to spend up to $7 million from the "operating" account for its ongoing professional fees and similar administrative expenses (most of which relate to the Debtor's litigation of disputes with the FDIC-Receiver).  *See id.*  The FDIC-Receiver agreed not to oppose these disbursements because the order otherwise imposed a stay pending the outcome of this appeal and thereby assured that

the FDIC-Receiver's rights in substantially all of the account balances would be protected pending appeal.

Then, only weeks ago, the Debtor filed a new motion with the bankruptcy court for permission to withdraw the entire remaining balance of $5.4 million from the "operating" account. The Debtor did not provide any evidence of an immediate need for the funds, instead asserting generically that it wanted to spend the funds to pay claims and to satisfy unspecified administrative expenses. The FDIC-Receiver objected to the motion and filed its own motion to enforce the bankruptcy court's stay order pending appeal.

At a hearing on those cross-motions, the Debtor failed to adduce any evidence of a pressing need for release of the funds in the "operating" account. The Debtor admitted that in <u>only ten months</u> it had spent the entire $7 million that it was allowed to spend under the January stay order. It claimed to owe approximately $1 million for professional fees but also admitted that it has on hand, or soon will, roughly the same amount of funds from sources other than the disputed accounts. In addition, the Debtor's plan trustee admitted that he had made no serious effort during 2011 to control the excessive fees expended by the estates' professionals even though he knew that the funds available to pay them might never be greater than the $7 million allowed under the January order. No written budget has been required by the Debtor from any of its professionals, nor has the Debtor ever pressed its lawyers to pursue the litigation against the FDIC-Receiver for a contingency fee (even while some other matters are being handled by the Debtor's lawyers on that basis).

In an opinion and order entered on December 1, 2011, the bankruptcy court overlooked these facts (or lack of facts) and granted the Debtor's motion to immediate use of the entire $5.4 million balance remaining in the operating account. *See* Clarke Decl., Exhs. 2 & 3. The

principal basis for that ruling was the bankruptcy court's conclusion that absent such relief the Debtor would suffer irreparable harm. *See id.* at 5. To the contrary, *self-inflicted* harm does not amount to irreparable harm as a matter of law, and those are the circumstances presented here.

The bankruptcy court also mistakenly found that the FDIC-Receiver would be protected – despite the Debtor's use of the entire remaining balance – based on the granting of a "replacement lien" against any proceeds that might be obtained through the Debtor's liquidation of other assets. Most of those potential "assets" are, in fact, claims to disputed assets that are the FDIC-Receiver's property, and in any event a replacement lien in speculative litigation proceeds affords the FDIC-Receiver no protection at all.

No serious harm will befall the Debtor if it is required to wait until this appeal is decided before it gains access to the balance in the "operating" account. On the one hand, if the FDIC-Receiver prevails on appeal, the Debtor will not be harmed because it never had a right to use any of the deposit balances in the first place. On the other hand, if the FDIC-Receiver does not prevail on appeal, a stay would only modestly delay the Debtor's payment of bills submitted by certain of its professionals, all of whom understood the risk that they might never be paid at all because of this dispute. That is not irreparable harm.

The FDIC-Receiver therefore respectfully requests that the Court enter a stay pending appeal under Bankruptcy Rule 8005 and an interim stay pending the Court's determination of that motion.

## **PROCEDURAL BACKGROUND**

The underlying appeal concerns three orders of the United States Bankruptcy Court for the Middle District of Alabama (Williams, C.J.) in the chapter 11 case of The Colonial BancGroup, Inc. (the "<u>Debtor</u>"): (1) a memorandum opinion entered on January 24, 2011; (2) an order entered on January 24, 2011 denying the motion of the FDIC-Receiver for relief under

4

11 U.S.C. § 362(d) to permit the FDIC-Receiver to exercise certain setoff rights, and (3) an order entered on January 25, 2011 granting the Debtor's motion to use cash collateral and overruling the FDIC-Receiver's objection to that motion.  A 1, A 22, A 23.[1]

The underlying opinion and orders concerned six deposit accounts established in the name of the Debtor with its wholly owned subsidiary Colonial Bank before the Debtor filed its bankruptcy petition.  The FDIC-Receiver succeeded to all rights, titles, powers, and privileges of Colonial Bank when it was appointed.  BB&T currently maintains the six deposit accounts as the assuming bank under a purchase and assumption agreement with the FDIC-Receiver.  The FDIC-Receiver asserted substantial pre-petition claims against the Debtor that may be setoff against the deposit balances in those accounts.  In its January 24, 2011 opinion and order, the bankruptcy court denied the FDIC-Receiver's motion for relief from the automatic stay to protect and permit the exercise of its setoff rights against the deposit balances.  In its January 25, 2011 order, the bankruptcy court granted the Debtor's motion to use the balance in the "operating" account because, in the bankruptcy court's view, the FDIC-Receiver did not owe a mutual prepetition debt to the Debtor.

Shortly after the last of these orders was entered, the Debtor instructed BB&T to transfer the entire balance of the "operating" account to another bank.  *See* Clarke Decl., Exh. 5.  The Debtor's counsel refused to defer the requested transfer of the balance until the bankruptcy court had an opportunity to rule on a motion for a stay pending appeal.  *See* Clarke Decl., Exh 6.  As a result, on the same day as the Debtor's instruction, the FDIC-Receiver filed a notice of appeal from the rulings and an emergency motion for a stay pending appeal.  In accordance with

---

[1] Citations to "A ___" refer to pages within the Appendix submitted by the FDIC-Receiver in this appeal [Doc. No. 15-1].

Bankruptcy Rule 8005, the motion for a stay was filed with the bankruptcy court. *See* Fed. R. Bankr. P. 8005.

The Debtor objected to the FDIC-Receiver's motion for a stay pending appeal. On January 28, 2011, after holding several telephonic hearings, the bankruptcy court entered an order that was agreed to by the Debtor and the FDIC-Receiver which resolved the FDIC-Receiver's motion for a stay pending appeal and the Debtor's objection to it. *See* Clarke Decl., Exh. 1. The agreed order prohibited the transfer from BB&T of any part of the balances in the six deposit accounts, including the "operating" account, until the current appeal has been decided. It also prohibited the use by, or disbursement to, the Debtor of any portion of the deposit balances in the six accounts during that time, except that the Debtor was authorized to use up to $7 million from the "operating" account to pay its professional fees and other administrative expenses subject to certain procedural requirements.

The Debtor withdrew funds from the "operating" account at various times throughout 2011 to pay its professional fees and administrative expenses. On November 8, 2011, the Debtor filed a motion with the bankruptcy court requesting the release of the entire remaining balance in the "operating" account, which had been reduced to $5.4 million as the result of the Debtor's substantial expenditures. The motion confirmed that the Debtor had exhausted the entire $7 million allowed under the January 2011 stay order in only ten months time. In the motion, the Debtor stated that it wanted to use the $5.4 million for "the payment of . . . allowed claims against the Debtor's estate" and for professional fees and expenses. The Debtor did not specify how much it owed, if any, for professional fees and it did not set forth any facts showing an immediate need for funds.

The FDIC-Receiver objected to the Debtor's motion and requested an order from the bankruptcy court enforcing the existing stay pending appeal. A hearing on the motions was held before the bankruptcy court on November 29, 2011 during which the Debtor's counsel made an offer of proof as to various facts as to which its plan trustee, Kevin O'Halloran, was prepared to offer testimony. *See* Clarke Decl., Exh. 4 (transcript). None of the proffered facts indicated an immediate need for cash. The Debtor claimed that it owed roughly $1 million for professional fees incurred in September and October. During the FDIC-Receiver's cross-examination, Mr. O'Halloran: (i) admitted that the Debtor held $400,000 in cash in deposit accounts with other banks that was not subject to these disputes, Tr. at 33; (ii) admitted that the Debtor anticipated receiving roughly $650,000 from a pending real property sale, *id.* at 34; and (iii) asserted that the Debtor might collect an additional amount that was "north of two million dollars" if it could resolve a pending dispute with the Lehman Brothers bankruptcy estate, *id.* at 34-35. Mr. O'Halloran also acknowledged that there was no budget for use of the $5.4 million if the Debtor's motion were granted, *id.* at 58, and that he had never required any of the Debtor's law firms or other professionals to submit a written budget for their work, even after the bankruptcy court entered its January 2011 order limiting the Debtor's expenditures for professional fees from the "operating" account to $7 million. Tr. at 56.

On December 1, 2011, the bankruptcy court entered a memorandum opinion denying the FDIC-Receiver's motion to enforce the stay pending appeal and granting the Debtor's motion for release of the full remaining balance in the operating account. *See* Clarke Decl., Exh. 2. The bankruptcy court denied the Debtor's motion for permission to use the funds to pay allowed claims and limited the relief to payment of administrative expenses. The opinion also granted the FDIC-Receiver's request for a 14-day stay of the order's effectiveness to permit the FDIC-

Receiver to seek a stay pending appeal from this Court pursuant to Bankruptcy Rule 8005. An order to the foregoing effect was entered the same day in accordance with the memorandum opinion. *See* Clarke Decl., Exh. 3.

## ARGUMENT

### I. A STAY PENDING APPEAL IS WARRANTED AND SHOULD BE ENTERED BY THIS COURT PURSUANT TO BANKRUPTCY RULE 8005

A party seeking a stay pending appeal must show: "1) that the movant is likely to prevail on the merits on appeal; 2) that absent a stay the movant will suffer irreparable damage; 3) that the adverse party will suffer no substantial harm from the issuance of the stay; and 4) that the public interest will be served by issuing the stay." *Forest Oaks LLC v. SPCP Group LLC (In re Forest Oaks LLC)*, Civ. A. No. 10-00178-CB-M, 2010 WL 1904340, at * 3 (S.D. Ala. May 10, 2010) (quoting *Garcia-Mir v. Meese,* 781 F.2d 1450, 1453 (11th Cir.1986)); *see* Fed. R. Bankr. P. 8005. "Ordinarily, the first factor is the most important. . . . But the movant may also have his motion granted upon a lesser showing of a 'substantial case on the merits' when 'the balance of the equities [identified in factors 2, 3, and 4] weighs heavily in favor of granting the stay.'" *Garcia-Mir*, 781 F.2d at 1453 (citation omitted). The FDIC-Receiver satisfies the standard here.

#### A. Likelihood of Success on the Merits

The FDIC-Receiver has a substantial likelihood of success on the merits of this appeal. The bankruptcy court orders at issue are predicated on the erroneous conclusion that a post-petition instruction by the FDIC-Receiver to BB&T excluding the six deposit accounts from "Assumed Deposits" under their purchase and assumption agreement would result in a post-petition incurrence of debt by the FDIC-Receiver and a lack of mutuality of obligation, as required for setoff under section 553(a) of the Bankruptcy Code. A 19. The bankruptcy court's holding was incorrect as a matter of law.

A debt "arises" for purposes of section 553(a) at the time that the obligation "comes into existence." *Cooper-Jarrett, Inc. v. Central Transport, Inc.*, 726 F.2d 93, 96 (3d Cir. 1984). With respect to deposit liabilities, the obligation arises when the depositor places funds on deposit with its bank. "The deposit of cash into a bank account creates a debtor-creditor relationship between the bank (as debtor) and the depositor (as creditor), at which time the depositor *'parts with title to the funds* in exchange for a debt owed to him by the bank.'" *In re Lehman Bros. Holdings, Inc.*, 404 B.R. 752, 758 (Bankr. S.D.N.Y. 2009) (emphasis added) (quoting *Official Comm. of Unsecured Creditors v. Mfrs. & Traders Tr. Co. (In re Bennett Funding Group, Inc)*, 146 F.3d 136, 139 (2d Cir. 1998)). In the proceedings below, the Debtor stipulated that the deposit balance in each of the accounts at issue was established with Colonial Bank before the Debtor's bankruptcy petition. A-82. It was then, and only then, that a debt to the Debtor "arose" for purposes of the mutuality requirements of section 553(a) of the Bankruptcy Code.

Nor did the FDIC-Receiver's delegation of deposit liabilities to BB&T under their purchase and assumption agreement "discharge" the FDIC-Receiver's pre-petition deposit obligations to the Debtor. It is "entrenched in the law of contracts," *Transportation & Transit Assocs. v. Morrison Knudsen Corp.*, 255 F.3d 397, 400 (7th Cir. 2001), that a contracting party does not divest itself of liability for a contractual duty by substituting another in its place. "While the assignee may be entitled to perform for the original obligor, the original obligor remains ultimately liable until discharged by performance or otherwise." *In re Washington Capital Aviation & Leasing*, 156 B.R. 167, 175 n.3 (Bankr. E.D. Va. 1993); *see* Restatement (Second) of Contracts, § 318(3); Joseph M. Perillo, Calamari and Perillo on Contracts, § 18.26 (5th ed. 2003).

9

The purchase and assumption agreement itself recognizes that the FDIC-Receiver retained liability to Colonial Bank's depositors notwithstanding the delegation of deposit liabilities to BB&T pursuant to that agreement. In section 9.4, the FDIC-Receiver and BB&T agreed that if any Colonial Bank depositor "does not accept" performance by BB&T and insists instead on performance of a deposit obligation by the FDIC-Receiver, then BB&T will provide the FDIC-Receiver with "funds sufficient to pay such claim in an amount not in excess of the Deposit liability reflected on the books of the Assuming Bank at the time such claim is made." A 124. The very existence of section 9.4 recognizes that the FDIC-Receiver's delegation of deposit liabilities to BB&T under the P&A Agreement did not "discharge" or "extinguish" the FDIC-Receiver's obligation to Colonial Bank depositors for those liabilities.

The Debtor has not identified any authority to support the proposition that a post-petition reassignment of a pre-petition deposit liability in these circumstances would create a new post-petition debt for purposes of section 553(a), nor did the bankruptcy court in its memorandum opinion.[2] The bankruptcy court's reasoning is impossible to square with the established principle of contract law already discussed. The FDIC-Receiver has always retained liability with respect to the Debtor's prepetition deposit balances notwithstanding the purchase and assumption agreement with BB&T. Mutuality of obligation therefore exists and always has existed within the meaning of section 553(a).

---

[2] By its literal terms, section 553(a) establishes the opposite. *Compare* 11 U.S.C. § 553(a)(2) (prohibiting setoff based on a "claim" that "was transferred by an entity other than the debtor, to such creditor – (A) *after the commencement of the case*; or (B)(i) after 90 days before the date of filing of the petition; and (ii) while the debtor was insolvent . . . .") (emphasis added) *with* 11 U.S.C. § 553(a)(3) (only prohibiting setoff " to the extent that . . . the debt owed to the debtor by such creditor *was incurred by such creditor* – after 90 days before the date of the filing of the petition . . . for the purpose of obtaining a right of setoff against the debtor . . .") (emphasis added).

Because an alleged lack of mutuality was the only basis for the bankruptcy court's rulings below, all of those rulings must be reversed.

### B. Irreparable Harm to the FDIC-Receiver Absent a Stay

The FDIC-Receiver will suffer irreparable harm if the Debtor is allowed to remove the entire remaining balance from the "operating" account as the bankruptcy court's December 1st order provides. Removing the entire deposit balance would subordinate the FDIC-Receiver's status from a secured creditor to a general unsecured creditor to the extent of that balance.

"An allowed claim of a creditor . . . that is subject to setoff under section 553 of this title, is a secured claim . . . ." 11 U.S.C. § 506(a); *United States v. Fleet Bank (In re Calore Exp Co., Inc.)*, 288 F.3d 22, 30 (1st Cir. 2002) ("a setoff claim qualifies as a secured claim"). Indeed, courts have recognized that a creditor holding a right of setoff is "the best secured of creditors." *United States v. Munsey Trust Co.*, 332 U.S. 234, 240 (1947). If the FDIC-Receiver has a right of setoff against the deposit balances, as it will establish in this appeal, then it will be entitled to a 100% recovery on its allowed claims against the Debtor to the extent of the balances that remain in those accounts.

In contrast, the Debtor has admitted that general unsecured creditors in its chapter 11 case will receive substantially lower recoveries on their allowed claims than will holders of allowed secured claims. *See* The Colonial BancGroup, Inc. Second Amended Disclosure Statement dated February 21, 2011, at 74 & Exh. F [Bankr. Doc. No. 1105-1]. Therefore, the Debtor will not have the resources available to make the FDIC-Receiver whole for the loss of its setoff rights against the "operating" account if the FDIC-Receiver is successful on appeal, and this by itself constitutes irreparable harm. *See Deckert v. Independent Steel Co.*, 311 U.S. 282, 290 (1940) ("[T]here were allegations that [the defendant] was insolvent and its assets in danger of

dissipation or depletion. This being so, the legal remedy against [the defendant], without recourse to the funds in the hands of [a third party], would be inadequate."); *Hoxworth v. Blinder, Robinson & Co., Inc.*, 903 F.2d 186, 205 (3d Cir. 1990) (collecting cases).

In its recent memorandum opinion permitting the Debtor to use the "operating" account balance, the bankruptcy court sidestepped this issue. The bankruptcy court reasoned that a purported "replacement lien" in any future funds that might be brought into the Debtor's bankruptcy estate would provide the FDIC-Receiver adequate protection for the loss of its setoff right. *See* Clarke Decl., Exh. 2 at 4. However, there is absolutely no evidence in the record that the Debtor will recover as much as $5.4 million from its various legal actions or the few non-litigation assets that have not already been liquidated. It was the Debtor's burden to establish that the FDIC-Receiver would receive adequate protection through the purported "replacement lien." *See* 11 U.S.C. § 363(p)(1). The Debtor failed to make any showing that the value of the putative "replacement lien" is equivalent to the protection the FDIC-Receiver would lose as the result of the Debtor's use of the account balance. *See Wabash Valley Power Ass'n Inc. v. United States (In re Wabash Valley Power Ass'n Inc.)*, 114 B.R. 613, 620 (S.D. Ind. 1989) (remanding order permitting use of cash collateral where debtor had not satisfied burden to establish adequate protection through granting of replacement lien).

### C. No Substantial Harm to Other Interested Parties

The bankruptcy court's conclusion that the Debtor would suffer irreparable harm if it were not provided access to the entire $5.4 million balance in the "operating" account was not supported by the record. The Debtor did not present any evidence of an immediate need for the account balance. To the contrary, the record showed that the Debtor has current cash available from other sources of $400,000 and expects to receive an additional $650,000 from the sale of

12

certain real property in the near future.  *See* Clarke Decl., Exh. 4 at 33-34.  In addition, the Debtor is in negotiations with the Lehman Brothers bankruptcy estate over an asset that could be worth more than $2 million.  *Id.* at 35.  These funds far exceed the Debtor's current obligations, which the Debtor's plan trustee testified were less than $1 million.  *Id.* at 58.

Even were these assets not available, the Debtor would not suffer irreparable harm as the result of a stay because any lack of funding faced by the Debtor is attributable entirely to the Debtor's own failure to budget or otherwise control the excessive fees charged by the estate's professionals.  It is well-recognized that self-inflicted harm cannot be considered irreparable harm.  11A Charles Alan Wright, Mary Kay Kane, Richard L. Marcus, Arthur R. Miller, *Federal Practice & Procedure* § 2948.1; *see, e.g., Salt Lake Tribune Publ'g Co., LLC v. AT&T Corp*, 320 F.3d 1081, 1106 (10th Cir. 2003); *Caplan v. Fellheimer Eichen Braverman & Kaskey*, 69 F.3d 828, 839 (3d Cir. 1995); *see also MNI Mgmt., Inc v. Wine King, LLC*, 542 F. Supp. 2d 389, 403 (D.N.J. 2008) (injury suffered by the nonmoving party "should be discounted if there are any facts indicating the injury was self-inflicted").  As recently as January, the FDIC-Receiver consented to the Debtor's use of up to $7 million from the "operating" account to pay its administrative expenses (in addition to roughly $2 million that the Debtor had already spent from that account with the FDIC-Receiver's consent).  The Debtor exhausted this substantial budget <u>in only ten months time</u>.  It made no attempt to require written budgets from its litigation counsel, it made no attempt to require written budgets from its bankruptcy counsel, and it did not request its litigation counsel to pursue the Debtor's meritless litigation with the FDIC-Receiver for a contingency fee.  *See* Clarke Decl., Exh. 4 at 55-58.

This appeal has been fully briefed and argument will occur soon.  Therefore, there is a finite period remaining before a decision will be issued from this Court on the merits.  There has

13

been no showing of an immediate need to use any of the "operating" account balance in the interim. The Debtor admitted that it has no budget of actual expenses. It offered nothing beyond guesswork for its explanation of how it might use the $5.4 million between now and the trial in the Debtor's litigation with the FDIC-Receiver.

Alternatively, even if the Debtor could show some need to use some portion of the "operating" account balance before this appeal has been decided, this Court would retain the authority even after entering a stay to enter "any other appropriate order during the pendency of [the] appeal on such terms and conditions as will protect the rights of all parties in interest." Fed. R. Bankr. P. 8005. This would include an order allowing the Debtor to use specific and limited funds from the "operating" account, when and if such use is actually necessary to meet its expenses and upon a showing of adequate protection of the FDIC-Receiver's rights. Such tailored relief would more appropriately protect the rights of all parties in interest, *pendent lite*, than would the wholesale destruction of the FDIC-Receiver's setoff rights that has been attempted by the Debtor.

### D.      The Public Interest Favors a Stay

The FDIC has most recently estimated the loss sustained by its deposit insurance fund as the result of the Colonial Bank failure to be approximately $5 billion. Under applicable law, the fund (as subrogee for the failed bank's protected depositors) will be the principal beneficiary (after administrative claimants) of any recovery obtained by the FDIC-Receiver in its disputes with the Debtor. *See* 12 U.S.C. § 1821(d)(11). There can be no doubt that protecting the deposit insurance fund in today's unsettled economic climate would serve the public interest. *Cf.* 12 U.S.C. § 1831*o*(a)(1) (statutory goal of "prompt corrective action" is to "resolve the problems of insured depository institutions at the least possible long-term loss to the deposit insurance fund").

The public interest in protecting hedge funds and other speculators who are the Debtor's other principal creditors is comparatively slight.

Even though the bankruptcy court recognized the public interest in the timely administration of failed bank receiverships, it believed that interest would be protected by the putative "replacement lien" that the Debtor would grant to the FDIC-Receiver in speculative future recoveries.  *See* Clarke Decl., Exh. 2 at 5-6.  The bankruptcy court erred in this conclusion; the "protection" afforded by such a replacement lien is illusory and falls far short of the adequate protection that it was the Debtor's burden to establish.  *See supra* at 11-12.

### E.     No Bond Is Required

Under both the Federal Deposit Insurance Act and the Bankruptcy Rules, the FDIC-Receiver is excused from posting a supersedeas bond as a condition to obtaining a stay pending appeal.  *See* 12 U.S.C. 1822(a); Fed. R. Bank. P. 8005.

## II.    EMERGENCY INTERIM RELIEF SHOULD BE GRANTED TO MAINTAIN THE STATUS QUO UNTIL THE MOTION FOR STAY CAN BE DECIDED

In its December 1st opinion and order, the bankruptcy court granted the FDIC-Receiver's request to stay for 14-days the effectiveness of its order permitting the disbursement of the "operating" account balance.  That interim stay of the bankruptcy court's ruling will expire at midnight on December 15, 2011.  The FDIC-Receiver therefore respectfully requests that this Court enter an order extending the 14-day stay that already has been entered by the bankruptcy court until this Court enters an order resolving the FDIC-Receiver's motion for a stay pending appeal.

Absent an interim stay, the Debtor will direct the transfer of the entire remaining balance in the "operating" account from BB&T to another bank, which for the reasons already discussed

will cause substantial irreparable harm to the FDIC-Receiver.  In comparison, the Debtor will not suffer any significant harm from such an interim order.

To the extent it may be deemed applicable, in accordance with Bankruptcy Rule 8011(d), a declaration setting forth the nature of the emergency that requires expedited consideration of the relief requested is being filed with this motion.

## CONCLUSION

For all of the foregoing reasons, the FDIC-Receiver respectfully requests this Court to enter a stay pending appeal and to grant the FDIC-Receiver the other interim relief requested herein and such other and further relief as may be just and proper.

Dated:  Montgomery, Alabama  
       December 8, 2011

Respectfully submitted,

 /s/ Michael A. Fritz, Sr.  
Michael A. Fritz, Sr.  
Fritz & Hughes LLC  
1784 Taliaferro Trail, Suite A  
Montgomery, Alabama  36117  
(334) 215-4422

John J. Clarke, Jr.  
Thomas R. Califano  
Spencer Stiefel  
DLA Piper LLP (US)  
1251 Avenue of the Americas  
New York, New York  10020-1104  
212-335-4500

Attorneys for the  
Federal Deposit Insurance Corporation  
as Receiver for Colonial Bank