**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF ALABAMA**

In re:

THE COLONIAL BANCGROUP, INC.,

Debtor.

FEDERAL DEPOSIT INSURANCE
CORPORATION, as Receiver for Colonial Bank,

Appellant,

v.

THE COLONIAL BANCGROUP, INC., et al.,

Appellees.

Case No.  2:11-cv-0133 (MHT)

Bankruptcy Appeal

**DECLARATION OF KEVIN O'HALLORAN, DEBTOR'S PLAN TRUSTEE, IN**
**SUPPORT OF RESPONSE OF APPELLEE THE COLONIAL BANCGROUP, INC.**
**TO MOTION OF THE FDIC-RECEIVER FOR A STAY PENDING APPEAL**
**AND EMERGENCY REQUEST FOR INTERIM RELIEF**

KEVIN O'HALLORAN, being duly sworn, deposes and states:

1.       I am the Plan Trustee for The Colonial BancGroup, Inc., a Delaware corporation (the

"Debtor") under the *Second Amended Chapter 11 Plan of Liquidation of The Colonial BancGroup, Inc.* (as

amended, the "Plan"), which was confirmed by the *Order Confirming the Second Amended Chapter 11 Plan*

*of Liquidation, As Amended, of The Colonial BancGroup, Inc.* [Bankr. Doc. No. 1286] entered on June 2,

2011, by the United States Bankruptcy Court for the Middle District of Alabama, Northern Division (the

"Bankruptcy Court") and became effective on June 3, 2011 (the "Effective Date").  Prior to the Effective Date

of the Plan, I served as the Chief Recovery Officer for the Debtor as debtor in possession in its Chapter 11 case pending before the Bankruptcy Court, styled as In re The Colonial BancGroup, Inc., Case No. 09-32303.

2.      I make this declaration in support of the Debtor's Response to *FDIC-Receiver's Motion for a Stay Pending Appeal and Emergency Request for Interim Relief* (the "Stay Motion") [Doc. No. 47] filed by the Federal Deposit Insurance Corporation, as Receiver for Colonial Bank (the "FDIC-Receiver").

3.      The information set forth in this Declaration is based upon my personal knowledge, information provided to me by my professional advisors, and information that I have gathered from documents that I have reviewed and pleadings filed in this Chapter 11 case.

4.      The Debtor is a corporation formed under the laws of the State of Delaware and, prior to the commencement on August 25, 2009, of the Debtor's Chapter 11 case (the "Petition Date"), was headquartered and conducted business at 100 Colonial Bank Boulevard, Montgomery, Alabama 36117.

5.      Prior to the Petition Date, the Debtor was a bank holding company that owned Colonial Bank and also owned certain non-banking subsidiaries.

6.      On August 14, 2009, Colonial Bank was closed by the Alabama State Banking Department, and the FDIC-Receiver was appointed as receiver for Colonial Bank.

7.      The FDIC-Receiver sold and assigned substantially all of the assets of Colonial Bank to Branch Banking and Trust Company ("BB&T") pursuant to a Purchase and Assumption Agreement dated as of August 14, 2009, among the FDIC-Receiver, the Federal Deposit Insurance Corporation, in its corporate capacity, and BB&T.  The assets transferred to BB&T included the Debtor's demand deposit accounts that had been maintained at Colonial Bank.

8.      On the Petition Date, the Debtor filed a voluntary petition for relief under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the Bankruptcy Court.

9.       In my two capacities as Chief Recovery Officer for the Debtor prior to the Effective Date of the Plan and as the Plan Trustee under the Plan, I have been primarily responsible for tracking and paying the Debtor's expenses.

10.     On January 28, 2011, the Bankruptcy Court entered the *Agreed Order Disposing of FDIC-Receiver's Emergency Motion for Stay Pending Appeal* (the "Agreed Cash Order") [Bankr. Doc. No. 1067]. The Agreed Cash Order authorized the Debtor to withdraw up to $7 million from Account No. XXXXXX1127 (the "Operating Account") at BB&T to pay Administrative Expenses (as defined in the Agreed Cash Order) pending this Court's ruling on the Appealed Orders (as defined in the Debtor Response), "unless and to the extent otherwise ordered by [the Bankruptcy Court] after notice and a hearing."

11.     Based on the Agreed Cash Order, the Debtor used approximately $2.3 million in the Operating Account to pay outstanding professional fees and expenses incurred by the Debtor during 2010, with a small amount being for professional fees and expenses incurred in 2009.  These fees and expenses were outstanding as of the entry of the Agreed Cash Order, were never objected to by the FDIC-Receiver, and were approved for payment by the Bankruptcy Court as a part of both interim and final fee applications.  These applications covered fees and expenses going back to January of 2010.

12.     The Debtor also used approximately $4.1 million to pay professional fees and expenses incurred during 2011, both before and after the Effective Date of the Plan. All of these fees and expenses were paid in accordance with the Bankruptcy Court's orders and, in the case of professionals, after review and approval of interim and final fee applications.

13.     Of these professional fees and expenses incurred and paid by the Debtor for 2010 and 2011, approximately $3 million was for the fees and expenses of counsel to the Committee of Unsecured Creditors (the "Committee").

14.     The FDIC-Receiver never registered any objection to any of the fees or expenses paid in accordance with the Bankruptcy Court's orders.  The only reduction in any of these fees and expenses was a result of the Debtor's negotiated reduction of the fees and expenses of the Committee counsel by approximately $145,000.  This reduction was taken into consideration by the Debtor and not paid and is embodied in the Bankruptcy Court's order approving the fees and expenses of the Committee's counsel.

15.     The Debtor's payment of fees and expenses from the $7 million extended to fees and expenses incurred after the Plan was confirmed.  The lion's share of those fees and expenses relates to

- 3 -

litigation with the FDIC-Receiver, including (i) the so-called FIRREA litigation which has at stake more than $550 million in property and is pending before this Court, (ii) the Debtor's objection to the FDIC-Receiver's claim, which is also pending before this Court, (iii) the litigation with the FDIC-Receiver over its claim under Section 365(o) of the Bankruptcy Code, which the FDIC-Receiver has appealed to this Court, (iv) the FDIC-Receiver's appeal of the Bankruptcy Court's orders denying the FDIC-Receiver's requests for stay relief, and (v) other various disputes with the FDIC-Receiver.  The fees and expenses incurred in the various litigation matters with the FDIC-Receiver are both in the past and anticipated in the future to be the predominant share of the fees and expenses incurred by the Debtor in carrying out the Plan, and payment of these fees and expenses is critical to implementing the Plan.

16.     The balance of the $7 million which the Bankruptcy Court authorized the Debtor to use under the Agreed Cash Order was used to pay other expenses of the Debtor's bankruptcy estate within the scope of the definition of "Administrative Expenses" in the Agreed Cash Order.

17.     The Debtor requires access to the balance of the Operating Account to pay post-Effective Date expenses currently due and owing and other fees and expenses accruing and expected to accrue.  A major component of these fees and expenses relate to the litigation of disputes with the FDIC-Receiver.  The fees and expenses going forward also relate to other aspects of the Debtor's bankruptcy case, such as the costs, including experts, relating to (i) preparing federal and state tax returns for the Debtor and pursuing claims for tax refunds in the approximate amount of $250 million; (ii) the audit malpractice claims asserted by the Debtor, which claims seek the recovery of damages in excess of $500,000,000; (iii) the pursuit and settlement of claims involving directors and officers of the Debtor, which claims have been the subject of multiple days of mediation with counsel for the directors and officers, counsel for the FDIC-Receiver, and other claimants; (iv) completing the unwinding of the Debtor's employee benefit plans; (v) dealing with claims under the Debtor's $25 million fidelity bond; (vi) the Debtor's objections to claims against the Debtor's estate; (vii) the Debtor's pursuit of avoidance claims under Chapter 5 of the Bankruptcy Code and other claims against third parties; and (viii) the general cost of  implementing the Plan.

- 4 -

18.     Accrued, but unpaid, fees and expenses for the Debtor's professionals for the months of August, September and October of 2011 total approximately $893,000.  The FDIC-Receiver received copies of the statements for these professional fees and expenses in accordance with the Plan and did not register any objection to those statements that are outstanding.

19.     The Debtor has incurred additional professional fees and expenses during the month of November, 2011, estimated to be approximately $434,000.

20.     The Debtor has also incurred expenses for the services of  Newbridge Management, LLC, the entity that has provided support to the Plan Trustee and the Debtor in implementing the Plan, in connection with reviewing records to analyze and pursue avoidance claims, to formulate and prepare claims objections, and to assist with the various  litigation matters with the FDIC-Receiver. For the period beginning on the Effective Date through October, 2011, these expenses totaled approximately $103,000.

21.     The Debtor also is obligated for the statutory fees owing to the Plan Trustee for his services rendered during the period between the Effective Date and October, 2011. The fees owing to the Plan Trustee for his services during this period total approximately $189,000.

22.     The Debtor currently has on deposit in its Regions Bank account approximately $400,000. The Debtor has set these funds aside to pay critical costs to be incurred shortly in the various litigation matters, including the litigation against the FDIC-Receiver, the pursuit of avoidance claims, and the pursuit of the accounting malpractice claims, such as the costs of document management and production, other discovery costs, and the retention of experts.

23.     The Debtor anticipates that, from a closing on a Bankruptcy Court-approved sale of certain real property, the Debtor will receive net proceeds of approximately $630,000 (the "Sale Proceeds") before the end of the year. This sale, however, has not closed yet and still may not.

24.     The Operating Account currently holds a balance of $5.4 million. Even with the $400,000 in the Regions Bank account, and even assuming that the Debtor receives the Sale proceeds, the Debtor needs these funds from the Operating Account to implement the Plan, to prepare and file state and federal tax

- 5 -

returns, to litigate with the FDIC-Receiver, to finish the claim administration process, to pursue the accounting malpractice claims, and to pursue avoidance and other third party claims.

25.     In addition to the professional fees and expenses the Debtor will incur in continuing to implement the Plan and in defending and pursuing the various litigation matters, the Debtor will need to retain experts in these litigation matters to address such issues as insolvency and accounting standards and possibly to serve as rebuttal witnesses. I estimate that, for these various litigation matters, the expert fees and costs ultimately will aggregate approximately $1.5 million.

26.     Without these Operating Account funds, the Debtor will not be able to complete implementation of the Plan. The lack of access to these funds will particularly impact the Debtor's ability (i) to defend against the multitude of claims and assertions of the FDIC-Receiver, which the FDIC-Receiver continues to press both in the Bankruptcy Court and in this Court to seek to have all property of the Debtor's estate be exclusively for the benefit of the FDIC- Receiver, (ii) to retain necessary experts for all of the litigation matters, (iii) to perform all of the Debtor's duties under the Plan, including preparing and filing state and federal tax returns, (iv) to liquidate the assets of the Debtor's estate for the benefit of all of the Debtor's creditors.

Dated: December 12, 2011


  /s/ *Kevin O'Halloran* _____
Kevin O'Halloran, Plan Trustee

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was electronically served on December 12, 2011, by transmission of Notices of Electronic Filing generated by CM/ECF to persons registered as of issuance of filing, addressed as follows:

John J. Clarke, Jr. (john.clarke@dlapiper.com)

Mark D. Griffin (mark.griffin@revenue.alabama.gov)

Michael A. Fritz, Sr. (bankruptcy@fritzandhughes.com)

N. Christian Glenos (cglenos@ba-boult.com)

Spencer D. Stiefel  (spencer.stiefel@dlapiper.com)

T. Parker Griffin, Jr. (pgriffin@babc.com)

Thomas R. Califano (thomas.califano@dlapiper.com)

/s/ Rufus T. Dorsey, IV
Rufus T. Dorsey, IV

*Attorney for the Debtor*

- 7 -