UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| In re:<br><br>**THE COLONIAL BANCGROUP, INC.,**<br><br>    Debtor. | |
| **FEDERAL DEPOSIT INSURANCE CORPORATION,** as Receiver for Colonial Bank,<br><br>    Appellant,<br><br>    v.<br><br>**THE COLONIAL BANCGROUP, INC.,** et al.,<br><br>    Appellees. | Case No. 2:11-cv-0133 (MHT)<br><br>**Bankruptcy Appeal** |

**REPLY MEMORANDUM IN FURTHER SUPPORT OF FDIC-RECEIVER'S MOTION FOR A STAY PENDING APPEAL**

                                                  Michael A. Fritz, Sr.
                                                  michael@fritzandhughes.com
                                                  Fritz, Hughes & Hill LLC
                                                  1784 Taliaferro Trail, Suite A
                                                  Montgomery, Alabama  36117
                                                  (334) 215-4422

                                                  John J. Clarke, Jr.
                                                  Thomas R. Califano
                                                  DLA Piper LLP (US)
                                                  1251 Avenue of the Americas
                                                  New York, New York  10020-1104
                                                  (212) 335-4500

Dated:  December 14, 2011              Attorneys for the
                                                   Federal Deposit Insurance Corporation,
                                                   as Receiver for Colonial Bank

Appellant Federal Deposit Insurance Corporation, as receiver for Colonial Bank (the "FDIC-Receiver"), respectfully submits this reply memorandum in further support of its motion pursuant to Rule 8005 of the Federal Rules of Bankruptcy Procedure for a stay pending appeal to temporarily bar the debtor The Colonial BancGroup, Inc. (the "Debtor") from dissipating the entire balance in one of the six deposit accounts at issue and thereby destroying setoff rights that the FDIC-Receiver is seeking to vindicate in this appeal.[1]

The date for oral argument in this appeal is imminent, and the Debtor will not suffer irreparable harm if it must wait until a decision on the merits before it is permitted to use the remaining balance in the "operating" account, even assuming for the sake of argument that it prevails. Even in its recent filings, the Debtor does not identify any immediate need for the use of the funds at issue and instead seeks to exhaust the "operating" account balance merely to pay professionals who always understood the risk that their fees might never be paid because of this dispute. In contrast, permitting the Debtor to use the balance now *would* irreparably deprive the FDIC-Receiver of its setoff rights against the "operating" account balance when it prevails on the merits of this appeal in the near future. These are the quintessential circumstances when a stay pending appeal is appropriate.

---

[1] The Debtor is wrong in asserting that the FDIC-Receiver must first file a new notice of appeal from the bankruptcy court's December 1st orders and start a brand new process in the bankruptcy court to obtain a stay pending appeal. The substantive issue on appeal that requires a stay is whether the FDIC-Receiver has setoff rights against the six account balances at issue, including the balance in the "operating" account. Filing a second appeal from the bankruptcy court's recent orders will do nothing more than raise the same legal issue in a duplicative parallel proceeding. Moreover, the recent bankruptcy court orders expressly denied the FDIC-Receiver's motion for a stay pending *this* appeal and permitted the FDIC-Receiver a 14-day period to make the instant motion with this Court, just as Bankruptcy Rule 8005 contemplates. However, solely in order to eliminate any contention of waiver based on the Debtor's baseless procedural argument, the FDIC-Receiver will today be filing a timely notice of appeal from the December 1, 2011 bankruptcy court opinion and order.

Contrary to the Debtor's arguments, this Court is not bound by the bankruptcy court's denial of the FDIC-Receiver's motion for a stay pending appeal, and no deference is owed to those recent rulings. Under Bankruptcy Rule 8005, "[w]hen a movant brings its motion for a stay of a bankruptcy court order in the district court, the district court makes a *de novo* determination of whether to grant a stay, and the decision whether to grant a stay is within the sound discretion of the *district court*." *Jet Networks FC Holding Corp. v. Goldberg*, No. 09-21082-CIV, 2009 WL 1616375, at *3 (S.D. Fla. June 9, 2009) (emphasis added); *see* Fed. R. Bankr. P. 8005; *see also Jet Center Inc. v. City of Naples Airport Auth. (In re Jet Center Inc.)*, No. 2:05 CV 568 FTM 29DN, 2006 WL 449252, at *1 (M.D. Fla. Feb. 23, 2006) (citing *In re Lang*, 414 F.3d 1191, 1202 n.31 (10th Cir. 2005)).[2]

In urging that it be permitted to eliminate the FDIC-Receiver's setoff rights in the "operating" account balance at issue, the Debtor mistakenly asserts that the FDIC-Receiver "is not liable to the Debtor in respect of the accounts" and that any "post-petition action by the FDIC-Receiver would, at best, only create a **new** post-petition obligation, not an **old** pre-petition obligation that could be used for setoff in accordance with Section 553 of the Bankruptcy Code."

---

[2] The "abuse of discretion" standard advocated by the Debtor cannot be reconciled with the actual language of Bankruptcy Rule 8005, which provides that any bankruptcy court ruling concerning a stay pending appeal is "subject to the power of the district court" to reach its own conclusion. *See* Fed. R. Bankr. P. 8005 ("*subject to the power of the district court and the bankruptcy appellate panel reserved hereinafter*, the bankruptcy judge may suspend or order the continuation of other proceedings in the case under the Code or make any other appropriate order during the pendency of an appeal on such terms as will protect the rights of all parties in interest. A motion for such relief, or for modification or termination of relief granted by a bankruptcy judge, may be made to the district court or the bankruptcy appellate panel, but the motion shall show why the relief, modification, or termination was not obtained from the bankruptcy judge.") (emphasis added). Even if the abuse of discretion standard were applicable, a trial court "by definition abuses its discretion when it makes an error of law," *United States v. Brown*, 332 F.3d 1341, 1343 (11th Cir.2003) (quoting *Koon v. United States*, 518 U.S. 81, 100 (1996), and the bankruptcy court's denial of the FDIC-Receiver's motion for a stay pending appeal was based on the bankruptcy court's legal errors leading to its conclusion that the FDIC-Receiver had no setoff rights against the account balances. *See* Memorandum Opinion at 4.

2

*See* Debtor Opp. at 9, 10 (emphasis in original). The Debtor does not cite a single authority to support these assertions, and there are none. The deposit obligations at issue arose only once, when the Debtor parted title with funds in return for Colonial Bank's promise to repay, and the FDIC-Receiver's delegation of its deposit obligations to Branch Banking and Trust Company ("BB&T") did not "discharge" or "extinguish" those obligations (as the Debtor argues and as the bankruptcy court erroneously held). For purposes of setoff analysis, mutuality of obligation is – and always has been – present. *See* FDIC-Receiver Mem. Stay. at 9-10 (collecting citations).

The Debtor has no answer to these "entrenched" principles of law, *see Transportation & Transit Assocs. v. Morrison Knudsen Corp.*, 255 F.3d 397, 400 (7th Cir. 2001), and it therefore persists in mischaracterizing the deposit balances at issue as if they were actual funds that must be transferred from one holder to another in order for setoff to be accomplished. *See* Debtor Opp. at 9-10. But as the Supreme Court has recognized repeatedly, a deposit is not money; it "consists of nothing more or less than a promise to pay, from the bank to the depositor . . ." *Citizens Bank of Md. v. Strumpf*, 516 U.S. 16, 21 (1995) (citing *Bank of Marin v. England*, 385 U.S. 99, 101 (1966)). Setoff, in turn, is merely the cancellation of mutual *obligations* between two parties. *Strumpf*, 516 U.S. at 18. It is not dependent on one party holding another party's "cash." Because the FDIC-Receiver unquestionably has, and always has had, a pre-petition deposit obligation to the Debtor, it is irrelevant for purposes of setoff analysis that BB&T has maintained the deposit balances pending the outcome of this litigation concerning the effect of the automatic stay on the FDIC-Receiver's exercise of its rights.

The centerpiece of the Debtor's opposition is its assertion that "[c]ash is the lifeblood of any case, without which the debtor is rendered impotent." Debtor Opp. at 12-13. But the Debtor itself admits that it has access to current funds of *over $1 million* in the form of other account

3

balances and the proceeds from a real estate sale that it will receive within the next two weeks. *See* O'Halloran Decl., ¶¶ 22, 23.  Even without the "operating" account balance, therefore, the Debtor has ample "cash" available to "administer its bankruptcy case and to pursue and defend against claims under its liquidating plan" until this appeal can be decided.  Debtor Opp. at 12.  In a weak attempt to deflect the Court's attention from this indisputable fact, the Debtor's plan trustee asserts that "[t]he Debtor has set these [other] funds aside to pay critical costs to be incurred shortly in the various litigation matters . . ."  O'Halloran Decl., ¶ 22.  However, the Debtor does not say what these purported "critical costs" are or make any effort to quantify them and explain why they must be paid now and not later.

The Debtor's related attempt to portray itself as the victim of "multiple levels of attacks by the FDIC-Receiver" is a gross distortion of reality.  Before its bankruptcy, the Debtor admitted that 99.3% of its consolidated assets were owned by its subsidiary Colonial Bank, a separate legal entity that had its own rights and obligations.  Since its bankruptcy filing, however, the Debtor has waged aggressive litigation against the FDIC-Receiver in two different forums in an effort to use the courts to misappropriate for itself (and for its bondholders) assets such as tax refunds and REIT preferred securities that are, by operation of law, the FDIC-Receiver's property as the successor to the failed bank.  While the Debtor has initiated five separate actions or proceedings against the FDIC-Receiver, the FDIC-Receiver has filed none against the Debtor other than its protective proof of claim in the Debtor's bankruptcy case and the two motions to protect its rights in the bankruptcy court that are the subject of pending appeals.[3]

---

[3] The Debtor's five proceedings against the FDIC-Receiver include: *The Colonial BancGroup, Inc. v. F.D.I.C.*, No. 2:10-cv-0198 (MHT) (M.D. Ala.) (Debtor's pending action seeking a judicial determination of its disallowed receivership claim); *In re The Colonial*

In early 2011, the FDIC-Receiver proposed a compromise that would have ended the Debtor's litigation campaign and provided the Debtor with approximately $63 million in disputed assets to either distribute to its so-called "legitimate creditors" or to use to fund the Debtor's litigation against other defendants.  *See* The Colonial BancGroup, Inc. Second Amended Disclosure Statement dated February 21, 2011, at 98-99 [Bankr. Doc. No. 1105].  The Debtor rejected that proposal and chose instead to litigate with the FDIC-Receiver in the hope of obtaining a "home run" for the hedge fund investors who now sit on its plan committee and appear to be driving its litigation strategy.  In the process (as Mr. O'Halloran has admitted under oath), the Debtor made no attempt to control fees or impose budgets on its professionals, and it did not press its lawyers to agree to contingency fees for their work against the FDIC-Receiver to limit the unmanaged expenditure of the Debtor's limited resources.  It is only because of the Debtor's own decisions that it finds itself in the present circumstances, and its plea for this Court to work equity in its favor should be rejected.[4]

---

*BancGroup, Inc.*, No. 2:10-cv-0409 (MHT) (M.D. Ala.) (Debtor's pending objection to FDIC-Receiver bankruptcy proof of claim); *Colonial BancGroup, Inc. v. F.D.I.C.*, No. 2:10-cv-0410 (MHT) (M.D. Ala.) (Debtor's declaratory judgment action, which has been stayed in response to the FDIC-Receiver's motion to dismiss for lack of subject matter jurisdiction); *Colonial BancGroup, Inc. v. F.D.I.C.*, No. 2:10-cv-0411 (MHT) (M.D. Ala.) (Debtor's avoidance action which was stayed after the FDIC-Receiver filed its motion to dismiss for failure to state a claim); *Colonial BancGroup, Inc. v. F.D.I.C.*, Adv. Proc. No. 10-3019 (DHW) (Bankr. M.D. Ala.) (Debtor's adversary proceeding asserting ownership of real property housing an Orlando branch of Colonial Bank, which has since been resolved).

[4] The Debtor falsely asserts that the FDIC-Receiver did not object to the substantial professional fees that have been paid since January 2011.  To the contrary, with one limited exception, the FDIC-Receiver was the *only* party to file objections to those fees.  The FDIC-Receiver filed objections to the first, second and third interim fee applications filed by counsel for the Official Committee of Unsecured Creditors (the "Committee") on the ground that the fees reflected in those applications were unnecessarily duplicative and wasteful.  *See* Bankr. Doc. Nos. 583, 778, 959.  The bankruptcy administrator joined in one of those objections; the Debtor itself did not file any objections.  The FDIC-Receiver also requested that the bankruptcy court impose a mandatory holdback on *all* professional fees until the conclusion of the Debtor's bankruptcy case.  The bankruptcy court overruled the FDIC-Receiver's objections to the

Finally, the Debtor again fails to offer any evidence that the putative "replacement lien" in the Debtor's potential future recoveries will offer the FDIC-Receiver any value at all, much less the "adequate protection" that it is the Debtor's burden to establish. In this regard, the Debtor points to a theoretical $500 million claim that it has asserted against its former auditing firm and other choses in action, but it does not offer a single statement of fact that would support an inference that any of these "assets" is anything but speculative. *See* Debtor Opp. at 12. The Bankruptcy Court places the burden on the Debtor, not the FDIC-Receiver, to establish adequate protection. *See* 11 U.S.C. § 363(p)(1). The Debtor has not done so here.

---

Committee fees, and the ruling strongly implied that any future objections would have been similarly overruled. *See* Order entered Jan. 25, 2011 [Doc. No. 1052] The reductions sought in the FDIC-Receiver's objections far exceeded the $170,000 discount that the Debtor now claims it obtained from one of the Committee's law firms.

## **CONCLUSION**

For all of the foregoing reasons and for the reasons set forth in its prior submissions, the FDIC-Receiver respectfully requests this Court to enter a stay pending appeal and to grant the FDIC-Receiver the interim relief requested in the motion and such other and further relief as may be just and proper.

Dated:  Montgomery, Alabama
        December 14, 2011

Respectfully submitted,

 /s/ Michael A. Fritz, Sr.
Michael A. Fritz, Sr.
Fritz & Hughes LLC
1784 Taliaferro Trail, Suite A
Montgomery, Alabama  36117
(334) 215-4422

John J. Clarke, Jr.
Thomas R. Califano
Spencer Stiefel
DLA Piper LLP (US)
1251 Avenue of the Americas
New York, New York  10020-1104
212-335-4500

Attorneys for the
Federal Deposit Insurance Corporation
as Receiver for Colonial Bank

## CERTIFICATE OF SERVICE

      The undersigned hereby certifies he is one of the attorneys for defendant FDIC-Receiver and that on December 14, 2011, a true and correct copy of the foregoing document and accompanying documents were filed with this Court's ECF system in this action, which will cause the electronic service of these documents upon all persons registered in this action to receive CM/ECF notifications as of its filing to include the following:

**C. Edward Dobbs**
Parker, Hudson, Rainer & Dobbs, LLP
1500 Marquis Two Tower
285 Peachtree Center Avenue, NE
Atlanta, GA 30303
Email: ced@phrd.com

**J. David Freedman**
Parker, Hudson, Rainer & Dobbs, LLP
1500 Marquis Two Tower
285 Peachtree Center Avenue, NE
Atlanta, GA 30303
Email:  jdf@phrd.com

**Rufus T. Dorsey IV**
Parker, Hudson, Rainer & Dobbs, LLP
1500 Marquis Two Tower
285 Peachtree Center Avenue, NE
Atlanta, GA 30303
Email: rtd@phrd.com

**Mark Douglas Griffin**
State of Alabama Dept. of Revenue
Legal Division
PO Box 320001
Montgomery, AL 36132-0001
Email: mark.griffin@revenue.alabama.gov

**Nicholas Christian Glenos**
Bradley Arant Boult Cummings LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203
Email: cglenos@ba-boult.com

**Thomas Parker Griffin , Jr.**
Bradley Arant Boult Cummings,LLP
1819 5th Avenue North
Birmingham, AL 35203
Email: pgriffin@babc.com

                                              /s/ Michael A. Fritz, Sr.
                                                Michael A. Fritz, Sr.